[No. S132144. July 12, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
AARON MARCEL PALACIOS, Defendant and Appellant.

COUNSEL

Ward Stafford Clay for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Manuel M. Medeiros, State Solicitor General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Gil P. Gonzalez, Steven T. Oetting, Ronald A. Jakob and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

CORRIGAN, J.—We hold that the sentence enhancement provisions of Penal Code section 12022.53 are not limited by the multiple punishment prohibition of Penal Code section 654.[1] Section 12022.53 prescribes substantial sentence enhancements for using a firearm in the commission of certain felonies. Here, three enhancements were imposed under subdivision (d) of that statute based on a single shot fired at a single victim during the simultaneous commission of three qualifying offenses. The Court of Appeal held that punishment on all but one of these enhancements must be stayed pursuant to the multiple punishment prohibition of section 654, even though section 654 did not preclude separate punishment for each of the underlying offenses. We conclude that imposition of punishment for each of the multiple section 12022.53 enhancements in these circumstances is required. To hold otherwise would contravene the plain language of section 12022.53. Thus, we reverse the judgment of the Court of Appeal.

## I. FACTS AND PROCEDURAL BACKGROUND

On May 3, 2002, 19-year-old Brian Jones left work in Chula Vista around 2:00 a.m. and stopped at a nearby gas station. Shana Dreiling, a stranger, approached him and asked for a ride. Jones declined and Dreiling asked for change to make a phone call. As Jones reached into his car for money, defendant Aaron Marcel Palacios approached from behind, said he had a gun, and ordered Jones into the car. Dreiling got in the front passenger seat; defendant sat in the back.

Following defendant's orders, Jones drove to a location where he changed seats with Dreiling. Defendant ordered Dreiling to drive south on the freeway.

---

[1] All further statutory references are to the Penal Code. Section 12022.53 was amended after commission of the crimes at issue here. Because those amendments do not affect our analysis, we will quote from the current version of the statute.

Defendant told Jones he would drop him where he could not immediately call the police. He gave Jones money, saying it was taxi fare. As they neared the Mexican border, defendant told Dreiling to turn around and return north.

When they arrived at the Miramar section of San Diego, defendant told Dreiling to drive off the freeway. Apparently familiar with the area, defendant directed Dreiling through several turns until they arrived at a park. Defendant ordered Jones to follow Dreiling down a trail. Defendant, holding the gun, followed Jones.

After walking about 40 feet, defendant stopped and ordered Jones to remove his clothes, some of which defendant later took with him. At defendant's direction, Jones lay facedown on the ground, with his arms crossed beneath his head. Defendant told him to count to 100 and that he would be gone by the time Jones finished counting. As Jones counted to five or six, defendant fired a shot, hitting Jones in the upper right arm. Jones lay motionless, pretending to be dead. When he was certain he was alone, Jones walked out of the park to a nearby house where the resident called the police.

Later that morning, defendant and Dreiling drove Jones's car to Escondido, where they committed numerous crimes against Grant Carr, including residential burglary, robbery and kidnapping. Carr's wife escaped and alerted police. During a standoff at Carr's home, Dreiling was fatally shot and defendant was arrested. Jones's driver's license, credit cards and check card were found in Dreiling's pocket. Jones's wallet and clothing were found in his damaged car after it was recovered in Escondido.

Only sentencing issues regarding the crimes against Jones are at issue here. Defendant was convicted of attempted premeditated murder (§§ 187, subd. (a), 664, subd. (a)); kidnapping for robbery (§ 209, subd. (b)(1)); kidnapping for carjacking (§ 209.5, subd. (a)); carjacking (§ 215, subd. (a)); and robbery (§ 211). The jury found that defendant discharged a firearm and personally inflicted great bodily injury when committing these offenses. (§§ 12022.53, subd. (d), 12022.7, subd. (a).) Defendant was also convicted of assault involving personal use of a firearm. (§§ 245, subd. (a)(2), 12022.5, subd. (a).)

Defendant was sentenced to three consecutive terms of life imprisonment with the possibility of parole for the attempted murder and the two kidnapping convictions. The trial court added a section 12022.53, subdivision (d) enhancement of 25 years to life for each of these convictions. Sentencing on the remaining counts and enhancements was stayed pursuant to section 654.

On appeal, defendant argued the imposition of sentence for three section 12022.53 enhancements violated section 654's bar against multiple punishment because he fired one shot at a single victim. The Court of Appeal agreed, ruling: "[Defendant] discharged his gun and therefore he should be held accountable and be punished for that conduct. However, the fact the aggravated kidnappings were technically ongoing at the time he discharged the gun does not make [defendant] more culpable so as to justify imposing three times the punishment. The discharge of the gun was not made more dangerous or more harmful merely because the aggravated kidnappings had technically not yet ended. There was only one victim and only a single act of discharging a firearm. [Defendant's] punishment should be commensurate with his conduct, that is, he should be punished once for his discharge of the firearm, not three times."[2]

We granted the People's petition for review to determine whether section 654 bars imposition of sentence for multiple firearm enhancements under section 12022.53.

## II. DISCUSSION

"The legislative intent behind section 12022.53 is clear: 'The Legislature finds and declares that substantially longer prison sentences must be imposed on felons who use firearms in the commission of their crimes, in order to protect our citizens and to deter violent crime.' " (*People v. Garcia* (2002) 28 Cal.4th 1166, 1172 [124 Cal.Rptr.2d 464, 52 P.3d 648], quoting Stats. 1997, ch. 503, § 1.) Section 12022.53, subdivision (a) specifies the felonies to which the statute applies, and then the statute sets out three sentence enhancements for personal use or discharge of a firearm in the commission of those felonies: Subdivision (b) provides a 10-year enhancement for using a firearm; subdivision (c) a 20-year enhancement for intentionally firing the gun; and subdivision (d) a 25-years-to-life enhancement for intentional discharge causing great bodily injury or death to someone other than an accomplice.[3] (§ 12022.53, subds. (b), (c) and (d).) Each subdivision declares that its enhancements "*shall*" be applied "[*n*]*otwithstanding any*

---

[2] The Court of Appeal instructed the trial court to stay imposition of the section 12022.53, subdivision (d) enhancements attached to the two kidnapping convictions and also to strike the carjacking conviction as a lesser included offense of kidnapping for carjacking.

[3] The statutory scheme distinguishes among different levels of involvement of a firearm in the commission of a crime. Simple firearm use may include the threatening display of a gun or its use as a cudgel. Discharge of a firearm requires that the weapon actually be fired. (See *People v. Masbruch* (1996) 13 Cal.4th 1001, 1007 [55 Cal.Rptr.2d 760, 920 P.2d 705]; *People v. Wims* (1995) 10 Cal.4th 293, 302–303 [41 Cal.Rptr.2d 241, 895 P.2d 77].)

*other provision of law*" and as "an additional and consecutive term of imprisonment." (*Ibid.*, italics added; see *People v. Shabazz* (2006) 38 Cal.4th 55, 68 [40 Cal.Rptr.3d 750, 130 P.3d 519].) The only limitation to this rule is found in subdivision (f) as discussed further below.[4]

■ Section 12022.53, subdivision (d), the enhancement at issue here, provides in part: "Notwithstanding any other provision of law, any person who, in the commission of a [specified] felony . . . personally and intentionally discharges a firearm and proximately causes great bodily injury . . . or death, to any person other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life." The specified felonies to which section 12022.53, subdivision (d) applies include those listed in subdivision (a) as well as section 246 (shooting at an inhabited dwelling and other occupied targets) and section 12034, subdivisions (c) and (d) (discharging a firearm from a motor vehicle). (§ 12022.53, subd. (d).)

Further, section 12022.53 subdivision (h) provides: "Notwithstanding Section 1385 or any other provision of law, the court shall not strike an allegation under this section or a finding bringing a person within the provisions of this section."

■ Defendant's convictions for attempted murder, kidnapping for carjacking, and kidnapping for robbery are qualifying felonies. (§ 12022.53, subd. (a)(1), (3), (18).) When defendant shot Jones, attempting to kill him, the kidnapping offenses were still ongoing. "[T]he crime of kidnapping continues until such time as the kidnapper releases or otherwise disposes of the victim and [the defendant] has reached a place of temporary safety . . . ." (*People v. Barnett* (1998) 17 Cal.4th 1044, 1159 [74 Cal.Rptr.2d 121, 954 P.2d 384].) By finding the section 12022.53, subdivision (d) enhancement allegations to be true (hereafter subdivision (d) enhancements), the jury necessarily determined that defendant fired the gun and caused great bodily injury during the commission of each of the three offenses. Thus, in this case, section 12022.53 mandates punishment for each of the subdivision (d) enhancements.

■ The question is whether section 654 precludes punishment for more than one section 12022.53 enhancement when each is based on a single act committed against a single victim, although in the commission of separate crimes. Section 654, subdivision (a) provides that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished

---

[4] Additionally, a section 12022.53 enhancement must be imposed unless the defendant is subject to a different *enhancement* provision that specifies a longer term. (§ 12022.53, subd. (j); *People v. Shabazz, supra,* 38 Cal.4th at p. 70.)

under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Section 654 "protects against multiple punishment, not multiple conviction. [Citation.]" (*People v. Harrison* (1989) 48 Cal.3d 321, 335 [256 Cal.Rptr. 401, 768 P.2d 1078].) We have extended the protections of section 654 to cases in which several offenses are committed during a course of conduct deemed to be indivisible in time. (48 Cal.3d at p. 335.)

In *People v. Oates* (2004) 32 Cal.4th 1048 [12 Cal.Rptr.3d 325, 88 P.3d 56] (*Oates*), we considered whether section 654 barred imposition of sentence for multiple section 12022.53 enhancements when the defendant and his companions fired two shots at a group of five people, but hit only one of them. Oates was convicted of five counts of attempted premeditated murder and the jury found enhancements under 12022.53 applied as to each count.

We first determined that the language, legislative history, and purpose underlying section 12022.53 required imposition of subdivision (d) enhancements for each attempted murder conviction. (*Oates, supra*, 32 Cal.4th at pp. 1052–1062.) By its terms, subdivision (d) enhancements apply to " 'any person' who, 'in the commission of' a specified felony, 'personally and intentionally discharges a firearm and proximately causes great bodily injury . . . or death, *to any person other than an accomplice.*' . . . Based on the single injury to Barrera, the requirements of a subdivision (d) enhancement are met as to *each* of defendant's five attempted murder convictions, including those not involving the attempted murder of Barrera . . . ." (*Oates, supra*, at p. 1055.)

We then considered whether, under section 654, Oates could be punished for multiple subdivision (d) enhancements based on his single act of injuring Barrera. The People advanced alternative arguments: (1) section 654 does not apply to enhancements; (2) the express language, legislative history, and policies behind section 12022.53 create a broad exception to section 654; and (3) section 654 does not overcome the judicially created exception for cases involving multiple victims. (*Oates, supra*, 32 Cal.4th at p. 1062.) We found the People's last argument dispositive and concluded that the "multiple victim" exception to section 654 permitted imposition of sentencing on multiple subdivision (d) enhancements. (*Oates*, at p. 1063.) We did not address the People's other arguments. (*Id.* at p. 1066, fn. 7.)

Here, while committing multiple qualifying offenses, defendant fired one shot at a *single* victim. The People urge the remaining arguments left unresolved in *Oates, supra*, 32 Cal.4th 1048. We are persuaded that, in

enacting section 12022.53, the Legislature made clear that it intended to create a sentencing scheme unfettered by section 654. In light of this conclusion we need not address the People's argument that section 654 generally does not apply to enhancements. We leave that question for another day.

██ The first principle of statutory interpretation requires that we turn initially to the words of the statute to ascertain the Legislature's intent. "[I]f ' "the statutory language is clear and unambiguous, there is no need for construction and courts should not indulge in it. [Citation.] The plain language of the statute establishes what was intended by the Legislature." ' [Citation.]" (*People v. Johnson* (2006) 38 Cal.4th 717, 723–724 [42 Cal.Rptr.3d 887, 133 P.3d 1044].) Here, subdivisions (b), (c) and (d) of section 12022.53 repeatedly and expressly mandate that "[*n*]*otwithstanding any other provision of law*," the defendant "*shall be punished*" by a consecutive and additional term of imprisonment.

We considered the broad meaning of the phrase "notwithstanding any other provision of law" in *People v. Benson* (1998) 18 Cal.4th 24 [74 Cal.Rptr.2d 294, 954 P.2d 557] (*Benson*). There, we held that a conviction for which sentencing was stayed under section 654 may nevertheless constitute a strike under the "Three Strikes" law. We noted that the language of the Three Strikes law (§ 1170.12, subd. (b)(1)) "unequivocally establishes that the electorate intended to qualify as separate strikes *each* prior conviction that a defendant incurred relating to the commission of a serious or violent felony, notwithstanding the circumstance that the trial court, in the earlier proceeding, may have stayed sentence on one or more of the serious or violent felonies under compulsion of the provisions of section 654." (*Benson*, at p. 31.) The terms we deemed to override section 654 include the provision that a strike for purposes of the Three Strikes law " 'shall be defined' " as set forth in section 1170.12, subdivision (b) " '[*n*]*otwithstanding any other provision of law* . . . .' " (*Benson*, at p. 31.) We stated further, "The subdivision also provides explicitly that a stayed or suspended sentence is not exempt from qualifying as a strike (§ 1170.12, subd. (b)(1)(B)), a provision that is *not* limited to sentences stayed or suspended for purposes *other* than those set forth in section 654." (*Ibid.*)

Although the "stay of execution of sentence" language from section 1170.12, subdivision (b)(1)(B) provided additional support for our conclusion, we found the phrase "notwithstanding any other provision of law" means what it says. (*Benson, supra,* 18 Cal.4th at p. 32; see also *People v. Garcia* (2001) 25 Cal.4th 744, 757 [107 Cal.Rptr.2d 355, 23 P.3d 590]

[holding that "the plain and unambiguous language of the Three Strikes law discloses an intent to impose the enhanced, doubled sentence," relying in part on section 1170.12, subdivision (d)(1), which provides that " '*in every case*' " in which defendant has an applicable felony conviction, the Three Strikes law shall be applied " '[*n*]*otwithstanding any other provision of law*' "].) Here, the broad and unambiguous scope of "[n]otwithstanding any other provision of law" overrides the application, if any, of section 654 to the imposition of punishment prescribed in section 12022.53, subdivisions (b), (c) and (d).

Defendant argues that because the Legislature did not use the phrase "notwithstanding any other provision of law" as a preface to the entire statute, the phrase must be read, logically and reasonably, solely in the context of the particular subdivision in which it appears. He asserts that the phrase as used in section 12022.53, subdivisions (b), (c) and (d) ensures only that a defendant "shall be punished" by the section 12022.53 enhancement and not by other related firearm and great bodily injury enhancements. In other words, "[n]otwithstanding any other provision of law" refers to other applicable sentencing enhancements and does not include section 654. He cites no persuasive authority in support of this position and we reject it as contrary to the clear expression of the Legislature.

Defendant also relies on *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628] (*Romero*), in which we determined that the "notwithstanding any other provision of law" language in the Three Strikes law did not preclude trial courts from exercising their discretion under section 1385 to strike prior felony convictions. Section 667, subdivision (f)(1) provides that "[n]otwithstanding any other law," the Three Strikes law shall be applied in every case in which the defendant has a prior qualifying felony conviction. An amicus curiae brief in support of the People argued that the phrase "[n]otwithstanding any other provision of law" encompassed section 1385 and thus precluded a court from employing its powers under section 1385 to reduce a sentence. (*Romero*, at p. 523.) We cautioned, however, that "we will not interpret a statute as eliminating courts' power under section 1385 'absent a clear legislative direction to the contrary.' [Citations.]" (*Romero*, at p. 518.) We observed that subdivision (f)(2) of section 667 expressly authorizes the prosecutor to move to strike prior felony convictions *under section 1385*. (*Romero*, at p. 524.) By including this express reference to the statute, the Legislature necessarily intended that section 1385 remain in effect, allowing a court to exercise its authority to dismiss prior felony convictions on its own motion. We stated, "Thus, the command of the Three Strikes law—that it shall be applied '[n]otwithstand-

ing any other law'—cannot literally be followed without reference to and, if appropriate, action 'pursuant to,' section 1385." (*Romero*, at p. 524.)

*Romero* does not help defendant here. Section 12022.53 does not modify its "[n]otwithstanding any other provision of law" language with any express or implicit reference to section 654. Instead, the Legislature has unequivocally stated that, "[*n]otwithstanding any other provision of law*," a person who uses or discharges a firearm in the commission of a qualifying offense *shall be punished* by a section 12022.53 enhancement. (§ 12022.53, italics added.) This command *can* literally be followed without reference to section 654. Indeed, under the plain meaning of the phrase "notwithstanding any other provision of law," it must be.

Defendant nevertheless maintains that if the Legislature had intended to include section 654 within the scope of the phrase "notwithstanding any other provision of law," it would have done so expressly. He asserts the Legislature would not have employed such a nonspecific phrase to eliminate the venerable principles embodied in section 654. Analogizing to section 1385, he quotes the Court of Appeal in *People v. Wilson* (2002) 95 Cal.App.4th 198 [115 Cal.Rptr.2d 355]: "When the Legislature intends to divest trial courts of authority to strike an enhancement, it does not rely on nonspecific language, such as 'notwithstanding any other provision of law' (Pen. Code, § 12022.53, subds. (b), (c), (d)), but rather expressly divests trial courts of authority to strike (Pen. Code, § 12022.53, subd. (h))." (*People v. Wilson*, at p. 202.)

However, in *Benson, supra,* 18 Cal.4th 24, 32–33, we noted that courts have repeatedly upheld the Legislature's power to override section 654 by enactments that do not expressly mention the statute. In *People v. Hicks* (1993) 6 Cal.4th 784, 791–792 [25 Cal.Rptr.2d 469, 863 P.2d 714], we held that the Legislature, in enacting section 667.6, subdivision (c), was not required to cite section 654 to demonstrate its intent to create an exception to its provisions. In *People v. Ramirez* (1995) 33 Cal.App.4th 559, 573 [39 Cal.Rptr.2d 374], the court held that, with regard to section 667, subdivision (e), "A statute which provides that a defendant shall receive a sentence enhancement in addition to any other authorized punishment constitutes an express exception to section 654." In *People v. Powell* (1991) 230 Cal.App.3d 438, 441 [281 Cal.Rptr. 568], a case predating the enactment of the Three Strikes law, the court concluded that Health and Safety Code section 11370.2 authorized double punishment in addition to any other authorized penalty, thus prevailing over section 654 even though section 654 was not mentioned in the statute.[5]

---

[5] Defendant contends that even if the "notwithstanding any other provision of law" language was initially sufficient to preclude application of section 654, later legislative action eliminated such preclusion. He reasons as follows: In 1998, a year after the enactment of section

Another provision of section 12022.53 is germane to the questions at issue here. In subdivision (f), the Legislature expressly addressed the issue of multiple enhancements but chose to do so per *crime*. Section 654, on the other hand, prohibits multiple punishment per *act*. Subdivision (f) provides in part: "Only one additional term of imprisonment under this section shall be imposed per person *for each crime.* If more than one enhancement per person is found true under this section, the court *shall* impose upon that person the enhancement that provides the longest term of imprisonment." (§ 12022.53, subd. (f), italics added.)

In *Oates*, *supra*, 32 Cal.4th 1048, we explained that the intent of section 12022.53, subdivision (f) was to punish the use of firearms linked to the commission of applicable *crimes*, not discrete acts. Oates argued that although he fired his gun at five people, only one was injured. He claimed he should have received a single subdivision (d) enhancement as to that conviction and subdivision (c) enhancements on each of the remaining attempted murder counts.[6] (*Oates*, at p. 1056.) We rejected this argument: "[B]ecause the requirements of subdivision (d) have been met as to each conviction, defendant's solution contravenes the direction of section 12022.53, subdivision (f), that the court '*shall* impose upon that person the enhancement that provides the longest term of imprisonment.' Had the Legislature wanted to limit the number of subdivision (d) enhancements imposed to the number of injuries inflicted, or had it not wanted subdivision (d) to serve as the enhancement applicable to each qualifying conviction where there is only one qualifying injury, it could have said so." (*Ibid.*, italics added.) "The enactment

---

12022.53, the Legislature amended section 1170.11 to include section 12022.53 as a "specific enhancement" subject to the one-third calculation for consecutive sentencing of subordinate terms. (Stats. 1998, ch. 936, § 11; *People v. Moody* (2002) 96 Cal.App.4th 987, 992 [117 Cal.Rptr.2d 527].) Consecutive sentencing is governed by section 1170.1 and is "subject to Section 654." (§ 1170.1, subd. (a).) Therefore, according to defendant, because section 12022.53 is a specific enhancement for purposes of consecutive sentencing, and because consecutive sentencing is subject to section 654, then section 1170.1 necessarily overrides the "[n]otwithstanding any other provision of law" language of section 12022.53, as least as to the application of section 654.

Defendant goes too far. Section 1170.1 describes the computation of principal and subordinate terms when consecutive sentences are imposed. The reference to section 654 in section 1170.1 simply ensures that consecutive sentences for subordinate terms do not result in multiple punishment. By including section 12022.53 as a "specific enhancement" for purposes of section 1170.1, the Legislature was not broadly subjecting section 12022.53 to the operation of section 654. In any event, the indeterminate 25-years-to-life term of section 12022.53, subdivision (d) is not subject to the one-third limitation of section 1170.1. (*People v. Mason* (2002) 96 Cal.App.4th 1, 14–15 [115 Cal.Rptr.2d 359].)

[6] In *Oates*, as to each of the five attempted murder convictions, the jury found true enhancements under subdivisions (b), (c) and (d) of section 12022.53. (*Oates*, *supra*, 32 Cal.4th at p. 1053.) Here, only subdivision (d) enhancements were alleged and found true.

of [subdivision (f)] shows that the Legislature specifically considered the issue of multiple enhancements and chose to limit the number imposed only 'for each crime,' not for each transaction or occurrence and not based on the number of qualifying injuries. 'Under the maxim of statutory construction, *expressio unius est exclusio alterius*, if exemptions are specified in a statute, we may not imply additional exemptions unless there is a clear legislative intent to the contrary. [Citation.]' [Citation.] Here, there is no evidence of a contrary legislative intent." (*Id.* at p. 1057.) Thus in section 12022.53, the Legislature has chosen to limit enhancements based on the *crimes* committed rather than an analysis of individual *acts* as called for in section 654. This differing approach, read in conjunction with the "[n]otwithstanding any other provision of law language" contained in section 12022.53, subdivisions (b), (c) and (d), supports our conclusion regarding the Legislature's intent.

One further aspect of the statute undermines defendant's argument. Enhancements for some of the felonies specifically included in section 12022.53 would otherwise be barred if section 654 applied. By including them, the Legislature demonstrated its intent that multiple punishment be imposed for their commission. For example, the qualifying offenses listed in subdivision (a) include section 245, subdivision (d), assault with a firearm on a peace officer or firefighter. (§ 12022.53, subd. (a)(7).) Offenses for which the subdivision (d) enhancement is applicable include section 246, discharging a firearm at certain occupied structures, and section 12034, subdivisions (c) and (d), discharging a firearm from a vehicle. (§ 12022.53, subd. (d).) These offenses necessarily involve the use of a firearm and section 12022.53 expressly provides for a firearm use enhancement. By including these offenses and providing that its enhancements apply "[n]otwithstanding any other provision of law," the Legislature made clear its intention that section 654 not apply.

Likewise, section 12022.53 contemplates the imposition of enhancements to certain other qualifying crimes when those offenses involve the use of a firearm. For example, in *People v. Hutchins* (2001) 90 Cal.App.4th 1308 [109 Cal.Rptr.2d 643] (*Hutchins*), the Court of Appeal upheld imposition of a subdivision (d) enhancement when the defendant committed a murder using a gun. Hutchins argued that the trial court punished him twice for firing the shots that killed the victim by imposing a 15-years-to-life term for second degree murder plus a 25-years-to-life enhancement under subdivision (d). The Court of Appeal rejected the argument that the sentence violated section 654. Quoting and italicizing the phrase "[n]otwithstanding any other provision of law" of section 12022.53, subdivision (d), the Court of Appeal held: "Clearly, in enacting this provision the Legislature intended to *mandate* the imposition of substantially increased penalties where one of a number of crimes,

including homicide, was committed by the use of a firearm. In so doing, the express language of the statute indicates the Legislature's intent that section 654 *not apply* to suspend or stay execution or imposition of such enhanced penalties." (*Hutchins*, at p. 1313.) Thus, "where imposition of a firearms use enhancement is made *mandatory* notwithstanding other sentencing laws and statutes, it is *error* to apply section 654 to stay imposition of such an enhancement." (*Id.* at p. 1314; accord, *People v. Sanders* (2003) 111 Cal.App.4th 1371, 1375 [4 Cal.Rptr.3d 676].)

Defendant argues that *Hutchins, supra,* 90 Cal.App.4th 1308, and related cases are inapplicable because they hold only that section 654 does not preclude imposition of punishment for the substantive offense and the section 12022.53 enhancement when both are based on the same conduct. He asserts that the *Hutchins* analysis does not apply when multiple enhancements are based upon a single injury. However, the Legislature's mandate that section 12022.53 enhancements shall be imposed "[n]otwithstanding any other provision of law" leaves no room for such parsing. Nothing in the statute suggests the Legislature intended to override section 654 as to some applications of section 12022.53, but not others.

██ Finally, defendant argues that the Legislature could not have intended a "draconian" scheme whereby one injury could result in as many 25-years-to-life enhancements as there were qualifying offenses. He relies on the Court of Appeal's reasoning that the punishment should be commensurate with defendant's conduct rather than "the fact the aggravated kidnappings were technically ongoing at the time he discharged the gun." However, as we have discussed, the applicability of section 12022.53 enhancements necessarily depends on what is "technically ongoing at the time" a firearm is used. The Legislature premised section 12022.53 enhancements on a defendant's firearm use during underlying *crimes.* The statute "prescribes substantial sentence enhancements for *using a firearm* in the commission of certain listed felonies." (*Oates, supra,* 32 Cal.4th at p. 1052, italics added.) Although subdivision (d) incorporates an injury element, it still "clearly serves" legislative goals in deterring the use of firearms in crimes. (See *Oates,* at pp. 1057–1058.) Defendant fired a gun and caused great bodily injury while he was committing three crimes. The sentence imposed by the trial court is required by the statutory language and in keeping with the legislative purpose.

## DISPOSITION

The judgment of the Court of Appeal is reversed. The matter is remanded to that court with instructions to reinstate the 25-years-to-life terms imposed for the section 12022.53, subdivision (d) enhancements for the kidnap for robbery and kidnap for carjacking of Brian Jones.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.