68 Cal.Rptr.3d 415 (2007)
157 Cal.App.4th 14
The PEOPLE, Plaintiff and Respondent,
v.
Juan RODRIGUEZ, Defendant and Appellant.
No. B179600.
Court of Appeal of California, Second District, Division Four.
November 21, 2007.
*416 Murray A. Rosenberg, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Jason Tran and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.
MANELLA, J.

INTRODUCTION
Appellant was convicted of three counts of assault with a firearm, after he fired upon three victims during a single incident. The jury found true the special allegations that appellant had personally used a firearm and that he had committed the offenses "for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further or assist in criminal conduct by gang members." The trial court imposed a four-year firearm enhancement as to each count under Penal Code section 12022.5.[1] The court also imposed a gang enhancement pursuant to section 186.22, subdivision (b)(1), choosing the 10-year enhancement of subdivision (b)(1)(C), which is imposed when the underlying offense was a "violent felony" as defined in section 667.5. As relevant here, section 667.5, subdivision (c)(8), defines a violent felony as any felony in which the defendant uses a firearm as pled and proven pursuant to section 12022.5. Appellant contends the imposition of the two enhancements based upon the same firearm use violated section 654's prohibition against multiple punishments for the same act. We agree and modify the judgment to stay execution of the enhancements imposed under section 12022.5.

BACKGROUND
On August 18, 2002, appellant fired multiple shots at Miguel Rodriguez, Jose Rodriguez and Oscar Rodriguez. Appellant was convicted of three counts of assault involving personal use of a firearm (counts 6, 7 and 8 of the information). (§ 245, subd. (a)(2).) The jury found true the special allegation as to each offense that appellant had personally used a handgun within the meaning of sections 12022.5, 1192.7, subdivision (c) and 667.5, subdivision (c). The jury also found true the special allegation that each offense was committed for the benefit of, at the direction of and in association with a criminal street gang, with the specific intent to promote, further and assist in criminal conduct by gang members, within the meaning of section 186.22, subdivision (b)(1). Appellant was acquitted of the attempted murder of Miguel Rodriguez and of assault with a firearm charged in connection with another shooting on August 19, 2002. The jury was undecided as to other counts, and they were dismissed.
On September 23, 2004, the trial court sentenced appellant to 22 years, 8 months in prison. As to count 6, the court chose *417 the middle term of three years, enhanced by the middle term of four years under section 12022.5, subdivision (a), for the personal use of a firearm in the commission of the offense, and 10 years under section 186.22, subdivision (b)(1)(C), which increases the ordinary gang enhancement to 10 years where the underlying offense was a violent felony, as defined in section 667.5, subdivision (c).
As to count 7, the court imposed a consecutive term of one year (one-third the middle term), plus one year, four months (one-third the middle term under section 12022.5, subdivision (a)), and three years, four months (one third the middle term under section 186.22, subdivision (b)(1)(C)).
The sentence on count 8 was ordered to run concurrently with the sentences on counts 6 and 7. The court imposed the middle term of three years. The sentence was enhanced by four years under section 12022.5, subdivision (a), and 10 years under section 186.22, subdivision (b)(1)(C).
Appellant timely filed a notice of appeal November 10, 2004.

DISCUSSION
Appellant contends the trial court erred in enhancing his sentence as to each count for his firearm use, and also imposing a 10-year gang enhancement relating to violent felonies, due to the same firearm use. Appellant contends his sentence violated section 654, resulting in double punishment for the single act of using a firearm. Section 654 provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."
Appellant's sentence on each of the three counts was enhanced by section 12022.5 for personal firearm use. Under section 12022.5, subdivision (a), "any person who personally uses a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for 3, 4, or 10 years, unless use of a firearm is an element of that offense."[2]
Each sentence was further enhanced under section 186.22, subdivision (b)(1), which mandates additional punishment for specified gang involvement. Subdivision (b)(1)(A) provides for an additional punishment of two, three or four years, at the court's discretion. However, subdivision (b)(1)(C) provides for an augmented enhancement of 10 years where the underlying offense is a violent felony as defined in section 667.5. Section 667.5, subdivision (c)(8), defines a violent felony as any felony in which the defendant uses a firearm as pled and proven pursuant to section 12022.5. Because the jury found appellant had used a firearm within the meaning of section 12022.5, the court imposed the augmented gang enhancement of section 186.22, subdivision (b)(1)(C). Thus, appellant's sentence was enhanced under section 12022.5 for the act of using a firearm, and enhanced again under section 186.22, not simply for appellant's gang involvement, but for gang involvement that included the same firearm use.
*418 There is a conflict of authority whether section 654 applies to sentence enhancements. (See generally People v. Arndt (1999) 76 Cal.App.4th 387, 394-396, 90 Cal.Rptr.2d 415 (Arndt), and cases cited therein; 3 Witkin & Epstein, Cal.Criminal Law (3d ed. 2000) Punishment, § 132, p. 195.) One appellate court concluded that section 654 "is inapplicable to enhancements, because they individually `"`do not define a crime or offense but relate to the penalty to be imposed under certain circumstances.'"'" (People v. Boerner (1981) 120 Cal.App.3d 506, 511, 174 Cal.Rptr. 629 (Boerner), quoting People v. Walker (1976) 18 Cal.3d 232, 242, 133 Cal.Rptr. 520, 555 P.2d 306 (Walker) & People v. Strickland (1974) 11 Cal.3d 946, 961,114 Cal.Rptr. 632, 523 P.2d 672.)
Another court held that section 654 prohibited the imposition of two great bodily injury enhancements for a single act committed on one victim, concluding that the language quoted in Boerner, while correct, was "entirely too broad and was not supported by the authorities cited and quoted out of context." (People v. Moringlane (1982) 127 Cal.App.3d 811, 818, 179 Cal. Rptr. 726 (Moringlane), disapproved on another point in People v. Jones (1991) 53 Cal.3d 1115, 1144-1145, 282 Cal.Rptr. 465, 811 P.2d 757.) We agree. In Walker, upon which Boerner relied, the applicability of section 654 to enhancements was not before the California Supreme Court. Walker merely held that section 12022.5 does not apply to an accomplice who did not personally use a firearm. (Walker, supra, 18 Cal.3d at p. 242, 133 Cal.Rptr. 520, 555 P.2d 306; see Boerner, supra, 120 Cal.App.3d at p. 511, 174 Cal.Rptr. 629.) Further, the Supreme Court quoted People v. Strickland, which did not refer to section 654. (See People v. Strickland, supra, 11 Cal.3d at p. 961, 114 Cal.Rptr. 632, 523 P.2d 672; Walker, at p. 242, 133 Cal.Rptr. 520, 555 P.2d 306.) Moreover, section 654 does not prohibit multiple punishments solely for a crime or offense, as suggested by Boerner's language. (See Boerner, supra, 120 Cal.App.3d at p. 511, 174 Cal.Rptr. 629.) Section 654's prohibition extends to "[a]n act or omission that is punishable in different ways by different provisions of law...." (Italics added.)
Our Supreme Court has recognized, but declined to resolve, the conflict in the appellate courts. (See, e.g., People v. Palacios (2007) 41 Cal.4th 720, 727-728, 62 Cal.Rptr.3d 145, 161 P.3d 519 (Palacios ) ["[W]e need not address the People's argument that section 654 generally does not apply to enhancements. We leave that question for another day"]; People v. Oates (2004) 32 Cal.4th 1048, 1062-1063, 12 Cal.Rptr.3d 325, 88 P.3d 56; People v. Coronado (1995) 12 Cal.4th 145, 157-158 & fn. 8, 48 Cal.Rptr.2d 77, 906 P.2d 1232 (Coronado); see also People v. King (1993) 5 Cal.4th 59, 77, 19 Cal.Rptr.2d 233, 851 P.2d 27 [§ 12022.5].)[3] Most recently, *419 the Supreme Court has construed language of section 12022.53 as creating an exception to section 654. (Palacios, supra, 41 Cal.4th at pp. 726-728, 62 Cal.Rptr.3d 145, 161 P.3d 519.) As Palacios was decided after briefing in the instant case was complete, we gave the parties the opportunity to file supplemental briefs regarding the effect, if any, of Palacios on the issues in this appeal, either directly or by analogy. Respondent contends Palacios provides no guidance in this case, and respondent's supplemental brief contains no analysis. Appellant, on the other hand, notes that unlike section 12022.53 at issue in Palacios, no exception to section 654 appears in sections 12022.5 or 186.22.
The issue in Palacios was the effect of section 654 on the enhancements created by section 12022.53, applicable to the use of a firearm in the commission of certain enumerated felonies. The court reviewed the language of that statute, and concluded that "in enacting section 12022.53, the Legislature made clear that it intended to create a sentencing scheme unfettered by section 654." (Palacios, supra, 41 Cal.4th at pp. 727-728, 62 Cal.Rptr.3d 145, 161 P.3d 519.) The court noted that every enhancement-imposing subdivision of section 12022.53 "declares that its enhancements `shall' be applied [n]otwithstanding any other provision of law' and as `an additional and consecutive term of imprisonment.' [Citations.]" (Id. at pp. 725-726, 62 Cal.Rptr.3d 145, 161 P.3d 519.) The court concluded that the term, "`[notwithstanding any other provision of law,'" unambiguously referred to all other applicable sentencing provisions, including section 654, without the necessity of expressly referring to section 654. (Palacios, at p. 733, 62 Cal.Rptr.3d 145, 161 P.3d 519.) Section 12022.53 contains its own limitation in subdivision (j): "When an enhancement specified in this section has been admitted or found to be true, the court shall impose punishment for that enhancement pursuant to this section rather than imposing punishment authorized under any other provision of law, unless another enhancement provides for a greater penalty or a longer term of imprisonment." (See Palacios, supra, 41 Cal.4th at p. 726 & fn. 4, 62 Cal.Rptr.3d 145, 161 P.3d 519; see also People v. Shabazz (2006) 38 Cal.4th 55, 70, 40 Cal.Rptr.3d 750, 130 P.3d 519.)
Section 12022.5 contains no language similar to that of section 12022.53. The only instance where the phrase, "notwithstanding any other provision of law," appears in section 12022.5 is in subdivision (c): "Notwithstanding Section 1385 or any other provisions of law, the court shall not strike an allegation under this section or a finding bringing a person within the provisions of this section." There is no provision in section 12022.5 addressing the imposition of multiple enhancements, as in section 12022.53, subdivision (j). In short, there is no indication of legislative intent to require the imposition of section 12022.5 enhancements in addition to other enhancements, or to except section 12022.5 entirely from the reach of section 654.[4] The care with which the Legislature drafted section 12022.53 to avoid the application of section 654 suggests that it intended section 654 to apply to sentence enhancements, except where expressly provided otherwise.
In a case analogous to the instant one, an appellate court found section 654 applicable to a bodily injury enhancement the trial court had applied twiceonce as to an assault conviction involving a single victim, and again as to a burglary conviction based upon the same incident. (People v. Reeves (2001) 91 Cal.App.4th 14, 56, 109 *420 Cal.Rptr.2d 728 (Reeves).) Finding "no precedent approving of multiple sentence enhancements for a single assault against a single victim, even though the defendant committed additional crimes against that victim," the court held that "`section 654 ... prohibits the imposition of multiple enhancements for the single act of inflicting great bodily injury upon one person.'" (Id. at pp. 56-57, 109 Cal.Rptr.2d 728, quoting Moringlane, supra, 127 Cal. App.3d at p. 817,179 Cal.Rptr. 726.)
The court in Reeves observed that although the Supreme Court had declined to decide the applicability of section 654 to enhancements in general, it had "distinguished between `two types of sentence enhancements: (1) those which go to the nature of the offender; and (2) those which go to the nature of the offense [Citation.]'" (Reeves, supra, 91 Cal.App.4th at p. 56, 109 Cal.Rptr.2d 728, quoting Coronado, supra, 12 Cal.4th at p. 156, 48 Cal.Rptr.2d 77, 906 P.2d 1232.) As the court observed in Coronado, "enhancements such as section 667.5 `are attributable to the defendant's status as a repeat offender[]' ..., [while] `the second category of enhancements, which are exemplified by those authorized under sections 12022. 5 [use of firearm] and 12022.7 [great bodily injury], arise from the circumstances of the crime and typically focus on what the defendant did when the current offense was committed. [Citation.]'" (Reeves, at p. 56, 109 Cal.Rptr.2d 728, quoting Coronado, at p. 157, 48 Cal.Rptr.2d 77, 906 P.2d 1232, italics omitted.) The Reeves court found the distinction drawn by Coronado between types of enhancements to be significant, because "[m]ultiple enhancements for the same criminal conduct run directly counter to section 654's rule against multiple punishment in a way offender-status-based enhancements do not." (Reeves, supra, 91 Cal.App.4th at p. 56, 109 Cal.Rptr.2d 728.)
Similarly, the court in Arndt, which had previously followed Boerner, found support for applying section 654 to enhancements in Coronado's conclusion that prior prison term enhancements are an exception to section 654, because they do not implicate multiple punishment for the underlying criminal conduct, but rather, for the defendant's status as a repeat offender. (See Arndt, supra, 76 Cal.App.4th at pp. 394-396, 90 Cal.Rptr.2d 415; Coronado, supra, 12 Cal.4th at p. 158, 48 Cal.Rptr.2d 77, 906 P.2d 1232; § 667.5, subd. (b).) We agree that section 654 applies to enhancements "`which go to the nature of the offense'" and punish acts "`the defendant did when the current offense was committed.'" (Reeves, supra, 91 Cal.App.4th at p. 56, 109 Cal.Rptr.2d 728, quoting Coronado, supra, 12 Cal.4th at pp. 156, 157, 48 Cal. Rptr.2d 77, 906 P.2d 1232.) In this context, there is no "`meaningful distinction'" between bodily injury and firearm enhancements. (People v. Oates, supra, 32 Cal.4th at p. 1067, 12 Cal.Rptr.3d 325, 88 P.3d 56, quoting Moringlane, supra, 127 Cal.App.3d at p. 819, 179 Cal.Rptr. 726.)
Respondent contends both enhancements were correctly imposed, because assault with a firearm and doing so for the benefit of a criminal street gang involve different criminal objectives. Similarly, the dissent suggests that both enhancements are proper because substantial evidence supports a finding that appellant harbored different objectives in violating section 12022.5 and section 186.22, subdivision (b)(1)a personal motive of revenge on the one hand, and a gang-related motive on the other. We acknowledge that where a defendant harbors separate though simultaneous objectives in committing statutory violations, multiple punishments are permissible. (People v. Britt (2004) 32 Cal.4th 944, 951-952, 12 Cal. Rptr.3d 66, 87 P.3d 812). We further concur *421 that the trial court could reasonably have concluded appellant harbored separate objectives in committing the assault and in doing so for the benefit of his gang. However, the question here is not whether appellant's punishment for assault may be enhanced both for his use of a firearm and for the fact that he committed the assault to benefit a criminal street gang. It may. (See People v. Garcia (2007) 153 Cal. App.4th 1499, 1514, 64 Cal.Rptr.3d 104.) Rather, the question is whether the single act of using a firearm may be used both to enhance his punishment for assault and to augment the enhanced punishment he will necessarily receive for having committed the assault to benefit a gang.
In this context, the section 12022.5 enhancement is analogous to a lesser included offense. A lesser offense is necessarily included in a greater offense if all its statutory elements are included in the greater offense. (See generally People v. Medina (2007) 41 Cal.4th 685, 701, 61 Cal.Rptr.3d 677, 161 P.3d 187.)[5] As appellant could not have been eligible for the augmented gang enhancement of subdivision (b)(1)(C) of section 186.22 absent the jury's determination that he had used a gun within the meaning of section 12022.5, the gun use finding is necessarily included in the augmented gang enhancement. Indeed, this finding had already been the basis for the enhancement of appellant's sentence on his conviction for assault.[6] Thus, the act that rendered appellant eligible for the augmented gang enhancement necessarily included the act used to enhance his sentence for assault. As one court has observed in refusing to permit multiple punishments under different enhancements for the infliction of great bodily injury, where "the lesser enhancement ... is subsumed into [the greater enhancement] ... for the same infliction of great bodily injury[,] ... section 654 bars multiple punishment for the same act, and the lesser punishment ... must be stayed." (People v. Eck (1999) 76 Cal.App.4th 759, 763, 90 Cal.Rptr.2d 594.)
Accordingly, we hold that where, as here, the sole basis for the augmented gang enhancement of section 186.22, subdivision (b)(1)(C) was the precise act that warranted the enhancement of appellant's assault conviction under section 12022.5, the prohibition of section 654 operates to bar multiple punishment. Appellant must be "punished under the provision that provides for the longest potential term of imprisonment...." (§ 654.) Here, execution of the lesser punishment of four years, imposed pursuant to section 12022.5, must be stayed. (See Cal. Rules of Court, rule 4.447.)[7]

*422 DISPOSITION
Appellant's sentence is modified to stay execution of the enhancements applied pursuant to section 12022.5 to counts 6, 7 and 8. The trial court is directed to amend the abstract of judgment to reflect this modification and to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation. The judgment as modified is affirmed.
I concur: EPSTEIN, P.J.
WILLHITE, J., Dissenting.
I respectfully dissent.
I express no opinion whether Penal. Code section 654[1] applies to sentencing enhancements that "`go to the nature of the offense.'" (See People v. Reeves (2001) 91 Cal.App.4th 14, 56, 109 Cal.Rptr.2d 728.) Further, I do not endorse the new concept of "lesser included enhancements" that fails to examine the perpetrator's intent to determine whether section 654 prohibits multiple punishment. Rather, I conclude that even if section 654 applies to conduct-based enhancements, it does not, under established principles, prohibit the separate punishments imposed on defendant under section 12022.5, subdivision (a), and section 186.22, subdivision (b)(1)(C). Therefore, I would affirm the judgment, without entering the debate over whether section 654 applies to sentencing enhancements.
Whether a defendant's conduct constitutes a single act under section 654, and hence whether it can be the subject of multiple punishments, depends on the defendant's intent in violating the penal statutes involved. If the defendant harbors separate though simultaneous objectives in committing the statutory violations, multiple punishment is permissible. (People v. Britt (2004) 32 Cal.4th 944, 952, 12 Cal. Rptr.3d 66, 87 P.3d 812 (Britt); People v. Herrera (1999) 70 Cal.App.4th 1456, 1466, 83 Cal.Rptr.2d 307 (Herrera).) This question is one of fact for the trial court, and the trial court's finding will be upheld if supported by substantial evidence. (Herrera, supra, 70 Cal.App.4th at p. 1466, 83 Cal.Rptr.2d 307.)
The counts here at issue are counts 6, 7, and 8, on which the jury convicted defendant of assault with a firearm (§ 245, subd. (a)(2)) against Jose Rodriguez and his two brothers, Miguel and Oscar. On each count, the jury found true the allegation that defendant personally used a firearm under section 12022.5, subdivision (a), and that he committed the offense for the benefit of a criminal street gang under section 186.22, subdivision (b)(1). By virtue of the section 12022.5 findings, each assault with a firearm is a violent felony (§ 667.5, subd. (c)(8)), and therefore defendant is subject to the 10-year enhancement of section 186.22, subd. (b)(1)(C). That enhancement *423 applies when the underlying gang-motivated felony is a violent felony.
The trial court expressly concluded that section 654 did not prohibit sentencing under both section 12022.5, subdivision (a), and section 186.22, subdivision (b)(1)(C). Although the court made no specific finding that defendant entertained separate objectives in violating the two statutes, a reviewing court must infer such a finding and examine the record to determine whether substantial evidence supports it. (People v. Martin (2005) 133 Cal.App.4th 776, 781, 35 Cal.Rptr.3d 105.)
Viewed in the light most favorable to the judgment, the evidence in the present case showed that on March 9, 2002, Jose Rodriguez, his brother Miguel, and four friends were the victims of a shooting carried out by two VNE gang members, Tony Urbina and Albert Ortiz.[2] In his testimony at defendant's trial, Jose Rodriguez denied that he and Miguel were members of a rival gang, 18th Street, though he admitted that the teachers and principal at his high school thought he was because of his association with Abraham Trejo, who belonged to 18th Street. Abraham Trejo was present with Jose at the time of the March 2002 shooting.
Following the March 2002 shooting, Jose and Miguel cooperated with the police, and testified against the two assailants at their preliminary hearing in June 2002. Approximately two months later, on August 18, 2002, Jose and Miguel, along with their brother Oscar, were again the victims of a shooting by VNE gang members. In this incidentthe charged incident relevant to the section 654 issuedefendant, who was then a recently-admitted member of VNE, was the shooter.
According to Jose's testimony at defendant's trial, Jose was in the front of his residence with brothers Miguel and Oscar and several other family members. A green car drove up and stopped. Jose recognized defendant, who was a past schoolmate, as the rear passenger. Defendant fired two rounds from a semiautomatic pistol at Miguel from a distance of about three or four feet. As the car accelerated, defendant fired three or four more rounds at Jose and Oscar. No one was wounded. The other two occupants of the car were more senior members of VNE: the front passenger Aaron Matheu ("Kidd"), and the driver Byron Matheu ("Tiny").
Defendant was arrested on August 20, 2002. On August 22, 2002, he waived his rights and was interviewed by Christopher Keeling, a Los Angeles County Sheriffs Detective, and two other detectives. Defendant stated that he was aware that before the March 2002 shooting a VNE gang member named "Sneaky" had been beaten up by 18th Street gang members. The March 2002 shooting was in retaliation for that incident. Defendant also admitted being a VNE gang member and being the shooter in the August 18th shooting.
At defendant's trial Detective Keeling, a gang expert, testified that a new gang member such as defendant commonly proves his loyalty to the gang by committing a crime in the presence of more senior gang members. Further, it is not uncommon for a more senior gang member to direct junior members to commit a crime in furtherance of gang activities.
*424 Defendant testified at trial. As he had in his pretrial interview with Detective Keeling, he again admitted being the shooter in the August 18th shooting. However, he denied intending to kill the victims. Defendant testified that he grew up with Jose and Miguel Rodriguez, who became 18th Street gang members. Until June 2002, defendant occasionally hung out with them. Defendant was not then a VNE gang member, though he had friends that were. Jose and Miguel frequently asked defendant to join 18th Street, but he declined because other than Jose and Miguel he did not like the 18th Street gang members. One day defendant was present when Jose and Miguel, along with other 18th Street gang members, assaulted defendant's friend, Sneaky, who was a VNE gang member. Because Sneaky was outnumbered, defendant assisted him, and got beat up himself. Shortly afterward, on July 29, 2002, defendant joined VNE. He was "jumped in" by, among others, Aaron Mathieu, who was the front passenger in the August 18th shooting. Thereafter Jose and Miguel assaulted ("jumped") defendant a couple of times, once hitting him in the head with a bat, leaving scars.
Explaining the August 18 shooting, defendant testified that when he saw Miguel and Jose in front of their house, he told the others in the car that he was "tired of these fools." They had been bothering him, still insisting that he join 18th Street. Therefore, he decided to scare them so they would leave him alone. He pointed the pistol out the car window, and fired two rounds into the sky. He did not shoot at them, and did not intend to kill them.
The foregoing evidence is sufficient to support a finding that in the August 18th shooting, defendant harbored simultaneous but separate objectives in violating sections 12022.5, subdivision (a), and 186.22, subdivision (b)(1). First, defendant's testimony revealed that in his use of a firearm (§ 12022.5, subd. (a)) against the three victims, he harbored a personal motive. Before defendant joined VNE, Jose and Miguel Rodriguez had assaulted defendant's friend Sneaky. Defendant had defended Sneaky, and been beaten up himself. After defendant joined VNE, Jose and Miguel "jumped" him on other occasions, in one of which he was struck in the head with a bat leaving scars. Jose and Miguel had been insistent that he join the 18th Street gang despite his protestations that he did not want to join. Defendant was "tired of [those] fools," and when he fired on August 18 he did so to make them stop bothering him and "leave [him] alone."
Second, in violating the gang enhancement statute (§ 186.22, subd.(b)(l)) by using a firearm in the commission of assault with a firearm (§ 245, subd. (a)(2)), it may reasonably be inferred that defendant harbored a concurrent but separate gang-motivated objective. As a new gang member, he wanted to prove his loyalty to the gang. In the presence of senior gang members, he shot at persons he believed to be enemies of the gang, either because they had cooperated with authorities in prosecuting other VNE members for the March 2002 shooting, or because they were affiliated with the rival 18th Street gang, or both.
Because substantial evidence supports a finding that defendant entertained separate though simultaneous objectivesone purely personal, the other gang related when he violated the two statutes at issue, section 654, assuming it applies to conduct-based enhancements, does not preclude multiple punishment.
Finally, for analysis under section 654, there is no analogy to be drawn between, on the one hand, the concept of lesser included offenses, and, on the other hand, the relationship between section 12022.5, subdivision (a) and section 186.22, subdivision (b)(1). *425 Under section 654, conduct undertaken with separate but simultaneous intents is divisible; it constitutes more than one act, and may be punished more than once. (Britt, supra, 32 Cal.4th at p. 952, 12 Cal.Rptr.3d 66, 87 P.3d 812; Herrera, supra, 70 Cal.App.4th at p. 1466, 83 Cal.Rptr.2d 307.) To hold that a socalled "lesser included enhancement" is not subject to separate punishment, without reference to whether the perpetrator acted with a separate objective from that underlying the violation of the "greater" enhancement statute, is a new principle in section 654 jurisprudencea principle inconsistent with the test compelled by Supreme Court authority, under which the applicability of "[s]ection 654 turns on the defendant's objective in violating both provisions." (Britt, supra, 32 Cal.4th at p. 952, 12 Cal.Rptr.3d 66, 87 P.3d 812, original italics.) Further, People v. Eck (1999) 76 Cal.App.4th 759, 762, 90 Cal.Rptr.2d 594, provides no support for departing from standard section 654 analysis. In Eck, there was no contention that the defendant harbored separate objectives in violating the enhancement statutes there at issuesection 12022.55, which provides increased punishment for personally inflicting great bodily injury by discharging a firearm from a motor vehicle, and section 12022.7, subdivision (a), which provides a lesser punishment for mere personal infliction of great bodily injury. Thus, Eck involved only one act under section 654.
I would not enter the debate whether section 654 applies to enhancements. I would not create a new concept of "lesser included enhancements" that fails to rely on the perpetrator's intent for determining whether multiple punishment is permissible under section 654. Rather, I would simply assume (without deciding) that section 654 applies to the enhancements at issue, and would affirm the judgment under established section 654 principles.
NOTES
[1] All further statutory references are to the Penal Code.
[2] Although use of a firearm is an element of assault with a firearm, section 12022.5, subdivision (d) includes the following exception: "Notwithstanding the limitation in subdivision (a) relating to being an element of the offense, the additional term provided by this section shall be imposed for any violation of Section 245 if a firearm is used...."
[3] The "`multiple victim'" exception to section 654 permits multiple enhancements where the defendant has been convicted of offenses against more than one victim by means of a single firearm use. (People v. Oates, supra, 32 Cal.4th at p. 1063, 12 Cal. Rptr.3d 325, 88 P.3d 56.) Most cases applying section 654 to enhancements involve a single act committed against a single victim. (See, e.g., People v. Myers (1997) 59 Cal. App.4th 1523, 1530, 69 Cal.Rptr.2d 889 ["Nearly all cases which do apply Penal Code section 654 to enhancements have limited the number of enhancements applied to a single conviction, when there was a single act committed against a single victim"]; People v. Akins (1997) 56 Cal.App.4th 331, 338, 65 Cal. ` Rptr.2d 338.) Here, there were three victims of appellant's assault with a firearm. Thus, it was proper to impose an enhancement under section 12022.5 for each of the multiple victims. (See Oates, supra, at pp. 1063-1064, 12 Cal.Rptr.3d 325, 88 P.3d 56; see also People v. Coronado, supra, 12 Cal.4th at p. 158, 48 Cal.Rptr.2d 77, 906 P.2d 1232.)
[4] See footnote 2, ante.
[5] Where the elements of the lesser offense are necessarily included in the greater, conviction of both crimes is prohibited, and no multiple punishment results. (People v. Medina, supra, 41 Cal.4th at p. 701, 61 Cal.Rptr.3d 677, 161 P.3d 187.) Thus, for example, as attempted kidnapping is a lesser included offense of the separate crime of attempted kidnapping during the commission of a carjacking, a defendant may not be convicted of both offenses. (See id. at p. 702, 61 Cal.Rptr.3d 677, 161 P.3d 187)
[6] We do not suggest that enhancements may be true elements of any offense, and we are mindful of the California Supreme Court's recent rejection of that concept in relation to multiple punishment. (See, e.g., People v. Sloan (2007) 42 Cal.4th 110, 64 Cal.Rptr.3d 137, 164 P.3d 568; People v. Izaguirre (2007) 42 Cal.4th 126, 64 Cal.Rptr.3d 148, 164 P.3d 578.)
[7] The language of section 186.22, subdivision (b)(1), is mandatory. Subdivision (b)(1)(A) provides: "Except as provided in subparagraphs (B) and (C), the person shall be punished by an additional term of two, three, or four years at the court's discretion." (Italics added.) Subdivision (b)(1)(C) provides: "If the felony is a violent felony, as defined in subdivision (c) of Section 667.5, the person shall be punished by an additional term of 10 years." (Italics added.) Where an enhancement is mandatory, California Rules of Court, rule 4.447 limits the court's discretion: "No finding of an enhancement may be stricken or dismissed because imposition of the term either is prohibited by law or exceeds limitations on the imposition of multiple enhancements. The sentencing judge must impose sentence for the aggregate term of imprisonment computed without reference to those prohibitions and limitations, and must thereupon stay execution of so much of the term as is prohibited or exceeds the applicable limit. The stay will become permanent on the defendant's service of the portion of the sentence not stayed." (Italics added.) Thus, the sentencing Court may not choose to impose and stay the lesser enhancement of section 186.22, subdivision (b)(1), once the elements of subdivision (b)(2) are found true.
[1] All subsequent section references are to the Penal Code.
[2] According to Jose, the victims were in a car pulling into the driveway of Jose's house when they saw two men, one of whom was looking into a window, the other of whom was standing nearby. The two men ran toward the car. One started shooting as the other shouted, "Shoot `em" and "VNE." Jose was not struck, but his brother Miguel was shot in the head and two other people in the car were wounded. Miguel survived the shooting.