[No. F069243. Fifth Dist. Oct. 19, 2016.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE MANUEL REYES-TORNERO, Defendant and Appellant.

## COUNSEL

Rebecca P. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and R. Todd Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

### POOCHIGIAN, J.—

#### INTRODUCTION

Defendant/appellant Jose Manuel Reyes-Tornero approached four men at an outdoor card game. He pointed a gun at each of them and demanded their wallets. One of the men, Efren Cisneros,[1] refused to surrender his wallet and a struggle ensued wherein defendant shot Efren, causing great bodily injury. None of the other three card players were injured.

Defendant was convicted of four counts of assault with a firearm, among other crimes. The jury found true allegations that defendant had inflicted great bodily injury (GBI) on *Efren specifically* with respect to *each* of the four assaults.

Defendant contends that Penal Code section 654[2] prohibits multiple punishment on multiple great bodily injury enhancements relating to the same injuries to the same individual. Citing *People v. Oates* (2004) 32 Cal.4th 1048 [12 Cal.Rptr.3d 325, 88 P.3d 56] (*Oates*), the Attorney General responds that

---

[1] One of the assault victims, Jose Huerta Ramos, is sometimes referred to as "Huerta" and other times, "Ramos." Efren testified that his last name is Cisneros but also uses the last initial "V." To avoid confusion we refer to the victims by their first names; no disrespect is intended.

[2] All future statutory references are to the Penal Code unless otherwise noted.

the multiple victim exception to section 654 applies because there were multiple victims of the several assaults to which the GBI enhancements were attached.

Under *Oates*, the relevant "act[s] or omission[s]" are the assaults and the GBI enhancements "simply follow from" those assaults. And because there were multiple victims of the assaults, the multiple victim exception to section 654 applies and multiple punishment is permitted. We affirm the judgment.[3]

## BACKGROUND

On February 27, 2012, a second amended information charged defendant with attempted murder (count 1; §§ 664, 187, subd. (a)); four counts of robbery (counts 2–5; § 211); four counts of assault with a firearm (counts 6–9; § 245, subd. (a)(2)); and two counts of false personation (counts 10–11; § 529). The information alleged that, in committing the attempted murder and robberies, defendant personally and intentionally discharged a firearm causing great bodily injury. (§ 12022.53, subds. (b)–(d).) The information also alleged that in the commission of the assaults (counts 6–9), defendant personally inflicted great bodily injury on Efren.[4] (§ 12022.7, subd. (a).)

Defendant pled no contest to the false personation counts. The remaining counts were tried to a jury, which eventually deadlocked resulting in a mistrial. A second jury trial began on November 4, 2013. The second jury convicted defendant on all counts and found the enhancement allegations true.

The court sentenced defendant to the following prison terms: 10 years each for counts 6, 7, 8 and 9, which included three years for assault, plus four years for the firearm enhancement (§ 12022.5), plus three years for the great bodily injury enhancement (§ 12022.7);[5] a consecutive term of seven years to life on count 1, plus a consecutive term of 25 years to life for the firearm causing great bodily injury enhancement (§ 12022.53, subd. (d)); 28 years to life each for counts 2, 3, 4, and 5.[6] No prison time was imposed on counts 10 and 11.

---

[3] In the unpublished portion of the opinion we reject several additional claims made by defendant.

[4] Efren was identified by the initials E.V. in the information. (See fn. 1, *ante.*)

[5] The sentence on count 6 was stayed pursuant to section 654 and the sentences on counts 8 and 9 were to run concurrent to the sentence on count 7.

[6] The sentence on count 3 was to run consecutively to the sentence on count 2; the sentence on count 2 was to run concurrently to count 1; and the sentences on counts 4 and 5 were to run concurrently with the sentence on count 2.

## FACTS

For years leading up to December 4, 2010, Nazario Hernandez had hosted card games at his home about three times a week.

### Events of December 4, 2010

One of these card games took place outside Nazario's trailer on December 4, 2010. In attendance at the outdoor card game were Jose Ramos, Efren Cisneros, Ignacio Martinez, and Nazario Hernandez. Other individuals were playing another card game inside the trailer.

### Efren's Account

Around 8:00 or 8:30 p.m., Efren first noticed a man about three or four feet from the card table. Nazario was walking towards his trailer when the man "asked" for his money. Nazario thought the man was "playing" and "didn't pay any attention."

Then, the man came to where Efren was playing cards with Jose and Ignacio. The man had a gun and was covering his head with his sweatshirt. The man fired a warning shot at the ground, then threatened Jose and Ignacio with the gun by "put[ting] it behind them or on their head." The man told them, in Spanish, that he wanted their money. There was about $250 or $300 from the card game on the table. Jose and Ignacio said they would give him the money, but refused to give him their wallets.

The man then came towards Efren and pointed the gun at him. Efren also told the man that he could have the money but not his wallet. The man shot Efren below his right eye, next to his nose. Efren "guess[ed] he got frustrated from what I was saying so then I turned around and that is when I was shot." Efren then got up and tried to grab the man. During the short struggle, the man's face became uncovered and Efren got a good look at him. The man then shot Efren three more times. Efren saw the man take the money that had been on the table and left. Efren then drove himself to the hospital.

At trial, Efren identified defendant as the shooter.

### Ignacio's Account

At some point during the evening of December 4, 2010, a man with a black coat covering half his face approached the card game. The man stood behind Ignacio and silently watched the card game for "about 1 minute."

Ignacio did not think it was unusual to see someone he did not know because "a lot of people go" to Nazario's card games.

After watching the game for a minute, the man pulled out a gun "like a revolver" and demanded money. The man spoke only in Spanish. Ignacio thought the man was joking until he fired a warning shot. The man pointed the gun at Jose's head and said he would shoot him unless they gave him the money and their wallets. Efren tried to grab the gun, and the two "started scuffling." During the scuffle, the gunman's face became fully visible. Ignacio then heard three or four gunshots. The gunman "ran out" but returned to get the money on the table. Ignacio estimated there had been $80 or $120 on the table.

In court, Ignacio identified defendant as the gunman.

### Jose's Account

Jose testified while in custody for drug possession and methamphetamine use.

While Jose was playing cards, a man "came in and started looking around." The man pulled out a gun, pointed it at Jose and told him to put his money on the table.[7] The man said, "I'm not playing around asshole." The gunman also asked for wallets, so Jose put his wallet on the table. He told Jose to pull out the money from his wallet, but Jose responded that he did not have money in the wallet. The gunman told Jose to pull money out of his pockets, so Jose retrieved $20 or $35. Jose could not see the gunman's entire face because he "had a jacket zipped up to the top."

Next, the gunman went to Ignacio and made the same demands. Ignacio "put his things on the table." At some point, the gunman said, "I am not playing around. If you don't give it to me I am going to kill you, asshole."

Efren told the gunman, "[T]hat's all we have here." The gunman told Efren to "shut up" and to put his money on the table. Efren "stood up to try to go for his gun" and was shot. Efren and the gunman fought. The gunman grabbed the money before he left.[8]

At trial, Jose said he was not able to see the gunman's face "too well." The prosecution then asked Jose whether he had testified at the preliminary

---

[7] Jose's actual testimony was that the gunman "placed [the gun] on my head."

[8] From Jose's testimony, it is not clear if "the money" refers to the card game money, the money the men had emptied from their pockets, or both. When asked how much money had been on the table, Jose testified, "$30, 35. I don't remember too well."

hearing that he could see the gunman's face "more or less." Jose said he did not remember, but "perhaps" he had said that.

Nonetheless, Jose testified at trial that he "think[s]" defendant was the gunman.

### Nazario's Account

Sometime after 7:00 or 8:00 p.m., on December 4, 2010, a man with a gun and a sweater covering his face appeared. At the time, Nazario was beside the other three men playing cards. The man "put the gun to everybody's head" and demanded their wallets. Nazario thought the man was joking and made a swiping gesture as if to shoo him away. Nazario did not give the man his wallet. The man and Efren began fighting and the two fell to the ground. Nazario got up and did not see the shots that were fired.

Nazario testified at trial that he did not see the shooter's face.

Nazario said he did recall testifying twice in the past on this case. The prosecutor then asked whether Nazario recalled having previously identified defendant, in court, as the man who was "there that night December 4th." Nazario said he did not recall so testifying.

### Events After December 4, 2010

### Photographic Lineups

Jose, Efren, Nazario and Ignacio each identified defendant as the shooter in photographic lineups shown to them by Detective Frank Zaragoza.[9]

### Efren's Injuries

Efren was hospitalized for seven days. Two bullets were removed from his body, and two bullets were left in his body.

---

[9] Nazario was initially hesitant to cooperate with the photographic lineup. However, he eventually selected defendant's photograph. At trial, Nazario initially testified that he recalled being shown the photograph lineups, but shortly thereafter said he did not "remember if I saw them or not, I don't remember."

*Defendant's Arrest and Interrogation*

Defendant was arrested on January 13, 2011. Detective Zaragoza interrogated defendant that day. An audio recording of the interrogation was played for the jury. Defendant told Zaragoza that he "wasn't in town" on December 4, 2010.[10]

*Cell Phone Records*

A Sprint telephone records custodian testified that cellular calls are generally routed to cell phone towers that are two to 10 miles from the phone's location. However, if a tower is "over-capacitated" then a call would be routed to the closest open tower, which could be outside the two- to 10-mile range.

The records custodian testified that the cell phone number belonging to "Eric Contreras"[11] was involved in a phone call at 8:22 p.m. on December 4, 2010. That call originated on tower No. 174, which is located in Tulare.

*Defendant's Case*

Defendant's uncle, Rogelio Reyes (Reyes), testified that he went to Nazario's trailer on a regular basis in 2010 and was there on the night of December 4, 2010. Reyes saw the gunman but could not see his face because it was partially covered by a jacket or sweater.

Reyes said the gunman was "more or less like my size" except "a bit less fat than myself." Reyes testified he was five feet seven inches tall. Reyes said defendant was not the gunman. The gunman did not have defendant's "figure."

The defense called an expert witness on eyewitness identification. The expert testified that eyewitness identifications of strangers are unreliable.

## DISCUSSION

I.–IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[10] Defendant's interview is described in further detail below.

[11] The parties stipulated that, at the time of these events, defendant went by the name Eric Gil Contreras.

*See footnote, *ante*, page 368.

V. *Under Supreme Court Precedent, Defendant Was Not Improperly Subjected to Multiple Punishments for Inflicting GBI on Efren*

In counts 7, 8, and 9, defendant was convicted of assaulting Nazario, Jose, and Ignacio, respectively. Each of those counts had a great bodily injury enhancement (§ 12022.7, subd. (a)) based on the injury to Efren. Defendant claims that two of the three great bodily injury enhancements attached to counts 7, 8, and 9 should have been stayed under section 654. The Attorney General contends that because there were multiple victims/intents with respect to the underlying assault counts, the attached GBI enhancements need not be stayed under section 654.

### A. *Law*

Section 654 provides that "[a]n act or omission that is punishable in different ways by different provisions of law[17] shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).)

■ Plainly stated, section 654 "prohibits multiple punishment for the same 'act or omission.' " (*Correa, supra,* 54 Cal.4th at p. 337.) For example, if a convicted felon commits the single act of possessing a concealed weapon, he cannot be punished for both possession of a firearm by a felon and possession of a concealed weapon. (See generally *People v. Jones* (2012) 54 Cal.4th 350 [142 Cal.Rptr.3d 561, 278 P.3d 821].)

### B. *Section 654 and Enhancements*

■ The section 654 analysis can be become more difficult when enhancements are at issue. "[E]nhancements are different from substantive crimes" in

---

[17] Under its plain terms, section 654 would not apply here because the great bodily injury enhancements were not imposed under "different provisions of law." (§ 654, subd. (a).) Neither party discussed this issue, so we requested supplemental briefing.

In *Neal v. State of California* (1960) 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839], the Supreme Court said that "[a]lthough section 654 does not expressly preclude double punishment when an act gives rise to more than one violation of the same Penal Code section . . . it is settled that the basic principle it enunciates precludes double punishment in such cases also." (*Id.* at p. 18, fn. 1.) In *People v. Correa* (2012) 54 Cal.4th 331 [142 Cal.Rptr.3d 546, 278 P.3d 809] (*Correa*), the Supreme Court acknowledged *Neal*'s observation was "an incorrect statement of law" and held that "section 654 does not bar multiple punishment for violations of the same provision of law." (*Correa, supra,* at pp. 338, 344.) However, the Supreme Court held that under the due process clause, the new rule announced in *Correa* could only be applied prospectively. (*Correa,* at pp. 344–345.) Both parties agree that *Correa* cannot be applied here because defendant's crimes occurred in 2010, before *Correa* was decided.

that they often "focus on *aspects* of the criminal act that are not always present and warrant additional punishment." (*People v. Ahmed* (2011) 53 Cal.4th 156, 163 [133 Cal.Rptr.3d 856, 264 P.3d 822] (*Ahmed*), fn. omitted, original italics.) This difference "affects how section 654 applies to enhancements." (*Ibid.*, italics omitted.)

Consider the example of a defendant who commits the single act of shooting someone, resulting in great bodily injury. (See, e.g., *Ahmed, supra,* 53 Cal.4th at p. 159.) The defendant has committed assault with a firearm, and is also subject to sentence for enhancements for personally using a firearm (§ 12022.53, subd. (a)) and personally inflicting great bodily injury (§ 12022.7). In that situation, the assault and each of the sentence enhancements are based on the same act: the shooting. Which of the three may be punished under section 654?

The law is clear that punishment for the assault and *one* of the enhancements is permitted even though they are both based on the same act. (*Ahmed, supra,* 53 Cal.4th at p. 164.) "If section 654 barred *any* additional punishment for a single criminal act, then no enhancement at all would be permitted, a result obviously inconsistent with the function of sentence enhancements." (*Ibid.*)

However, *both* enhancements can only be simultaneously punished under section 654 if they concern different "aspects" of the criminal act of shooting. (*Ahmed, supra,* 53 Cal.4th at p. 164.)[18] Because personal firearm use and infliction of great bodily injury are different "aspects" of the criminal act of assault with a firearm, section 654 would presumably permit punishment for both enhancements.[19]

### C. Multiple Victim Exception to Section 654

■ The Supreme Court has created several extrastatutory exceptions to section 654. One such exception arises "when a defendant ' "commits an act of violence with the intent to harm more than one person or by means likely to cause harm to several persons," his greater culpability precludes application of section 654.' " (*People v. McFarland* (1989) 47 Cal.3d 798, 803 [254

---

[18] However, while section 654 itself may not permit multiple punishment of two enhancements, the particular enhancement statutes at issue in a particular case may override section 654. (See, e.g., *Ahmed, supra,* 53 Cal.4th at pp. 164–168.)

[19] *Ahmed* itself did not reach this issue because it concluded the relevant enhancement statutes permitted punishment for both enhancements notwithstanding section 654. (See *Ahmed, supra,* 53 Cal.4th at pp. 164–168.)

Cal.Rptr. 331, 765 P.2d 493].)[20] For example, if "a defendant, in a single incident, commits vehicular manslaughter as to one victim . . . and drunk driving resulting in injury to a separate victim" (*McFarland*, at p. 803), he may be properly subjected to multiple punishments for the injuries "that result[] from the same incident." (*Id.* at p. 804, fn. omitted.)[21]

### D. *Issue Presented*

The most difficult issue presented in this case arises at the intersection of the two areas of law discussed above: the application of section 654 to enhancements and the multiple victim exception to section 654. Specifically, we must determine which "act" to consider in our section 654 analysis.

■ If the relevant acts for section 654 purposes are the assaults (i.e., pointing the gun at Ignacio, Nazario, and Jose), then the multiple victim exception clearly applies. If, however, the relevant act is the infliction of great bodily injury on Efren, then the multiple victim exception would not apply. As explained in detail below, we conclude that under *Oates, supra*, 32 Cal.4th 1048, the relevant acts are those on which the underlying substantive offenses (i.e., the assaults) are based. Because there were multiple victims of those acts, the multiple victim exception applies and multiple punishment is permitted.

### E. *Analysis*

In *Oates*, the defendant fired into a group of five people. (*Oates, supra*, 32 Cal.4th at p. 1053.) A single victim was hit, necessitating amputation of his leg. Defendant was charged and convicted of five counts of attempted premeditated murder. Two of the attempted premeditated murder counts[22] had section 12022.53, subdivision (d) enhancements attached, which apply when

---

[20] Though this judicial exception to section 654 is not expressed in the text of the statute, we are bound to follow it. (See *People v. Jones, supra*, 54 Cal.4th at p. 362 ["despite no explicit reference to victims in section 654, we held that a single act can be punished more than once if it impacts *multiple victims*"].)

[21] "Assault is recognized as a crime of violence in this context." (*People v. Hopkins* (1985) 167 Cal.App.3d 110, 116 [212 Cal.Rptr. 888], disapproved on other grounds in *People v. Coronado* (1995) 12 Cal.4th 145, 159 [48 Cal.Rptr.2d 77, 906 P.2d 1232].)

[22] One of the attempted murder counts enhanced by section 12022.53, subdivision (d) was based on the victim that was actually hit by the bullet. (*Oates, supra*, 32 Cal.4th at p. 1053 [count 1 was the attempted murder of Barrera, the victim hit by the bullet].) The other attempted murder count enhanced pursuant to section 12022.53, subdivision (d) pertained to a victim who was not hit by a bullet. (See *Oates, supra*, at pp. 1053–1054 [count 5 was the attempted murder of Castrejon].)

a defendant "personally and intentionally discharges a firearm and proximately causes great bodily injury. . . ." (§ 12022.53, subd. (d).) The trial court stayed one of the two section 12022.53, subdivision (d) enhancements under section 654. The Court of Appeal also "agreed with defendant that section 654 precludes imposition of *two* subdivision (d) enhancements" based on a single injury. (*Oates, supra*, 32 Cal.4th at p. 1054, original italics.) The People sought Supreme Court review of the lower court's ruling on the section 654 issue. (*Oates*, at p. 1054.)

The Supreme Court reversed and concluded the defendant could be properly punished more than once for the single great bodily injury. (*Oates, supra*, 32 Cal.4th at pp. 1062–1069.) The Supreme Court held: "[W]e conclude that section 654 does not preclude imposition of multiple subdivision (d) enhancements based on the single injury to [the victim]. Under the 'multiple victim' exception to section 654, defendant may be punished for each of the attempted murder offenses he committed when he fired at the . . . group. The subdivision (d) enhancements 'simply follow from' his convictions on those 'substantive offenses.' [Citation.] They 'do not constitute separate crimes or offenses, but simply are the basis for the imposition of additional punishment for the underlying substantive offense.' " (*Id.* at p. 1066.)

■ We find *Oates* to be dispositive. In *Oates*, the Supreme Court reasoned that multiple punishment of the enhancements was permitted because the multiple victim exception applied to the underlying attempted murders and the enhancements simply followed from those attempted murders. (*Oates, supra*, 32 Cal.4th at p. 1066.) Similarly here, defendant could be punished for each assault because multiple victims were involved. Since the several GBI enhancements " 'simply follow from' " the convictions of these " 'substantive offenses' " (*ibid.*), they may be simultaneously punished.

## DISPOSITION

The judgment is affirmed.

Levy, Acting P. J., and Kane, J., concurred.

**POOCHIGIAN, J.,** Concurring.—I write separately to offer additional thoughts on defendant's claim under Penal Code section 654.[1] Though the

---

[1] Future statutory references are to the Penal Code.

judgment must be affirmed, I also note that this is not the result I would reach absent *People v. Oates* (2004) 32 Cal.4th 1048 [12 Cal.Rptr.3d 325, 88 P.3d 56] (*Oates*). (See, e.g., *People v. Calles* (2012) 209 Cal.App.4th 1200, 1218–1224 [147 Cal.Rptr.3d 673].)

## A. *Oates*

In the *Oates* decision, discussed at length in the court's opinion above, the Supreme Court held: "[W]e conclude that section 654 does not preclude imposition of multiple subdivision (d) enhancements based on the single injury to [the victim]. Under the 'multiple victim' exception to section 654, defendant may be punished for each of the attempted murder offenses he committed when he fired at the [] group. The subdivision (d) enhancements 'simply follow from' his convictions on those 'substantive offenses.' [Citation.] They 'do not constitute separate crimes or offenses, but simply are the basis for the imposition of additional punishment for the underlying substantive offense. [Citation.]' " (*Oates, supra,* 32 Cal.4th at p. 1066.)

Though *Oates*'s facts are not identical to those of the present case,[2] I believe a faithful application of its holding and reasoning requires affirmance here. I understand the holding quoted above to mean that when a court is determining whether the multiple victim exception applies to two or more enhancements, we are to look to the act(s) constituting the substantive offense, *not* to the act(s) underlying the enhancement. Here, the acts constituting the substantive offenses (i.e., assaults), were the acts of pointing the gun at or near each of the assault victims. Because there were multiple victims of these acts, the multiple victim exception applies not only to the assaults but also to any enhancements thereof (e.g., the great bodily injury (GBI) enhancements). And since the multiple victim exception applies to the enhancements, section 654 does not preclude simultaneous punishment of all the GBI enhancements under *Oates*.

### B. *A Different Approach*

While we find the reasoning of *Oates* controlling, I wonder whether its application leads to the wrong outcome in this case. In my view, the relevant "act or omission" on review of a section 654 claim is the one that defendant asserts has been improperly subjected to multiple punishment. (See § 654, subd. (a) [applies to act or omission "punishable" by statute].) In this case,

---

[2] For example, in *Oates*, the shots were fired "at the group." (*Oates, supra,* 32 Cal.4th at p. 1053.) Here, in contrast, the great bodily injury-inflicting shot was fired at a specific individual (i.e., Efren).

defendant is not raising a section 654 challenge to the multiple punishment of the assaults on Ignacio, Nazario, and Jose.[3] Instead, he is challenging the multiple punishment he received for his singular infliction of great bodily injury on Efren.[4] Thus, with respect to defendant's claim, the "act or omission" that is "punishable" (§ 654, subd. (a)) by the GBI enhancements is the act of shooting Efren (not the acts of assaulting the other three individuals).[5]

### C. People v. Palacios

In *People v. Palacios* (2007) 41 Cal.4th 720 [62 Cal.Rptr.3d 145, 161 P.3d 519] (*Palacios*), the Supreme Court considered whether section 654 applies to section 12022.53 enhancements. In concluding that section 654 does not apply, the Supreme Court pointed to language in section 12022.53 saying the enhancement was to be imposed "[n]otwithstanding any other provision of law." (§ 12022.53, subd. (d).) The enhancement at issue in the present case, section 12022.7, has no analogous language, and *Palacios* is distinguishable on that basis.

The *Palacios* court also discussed how subdivision (f) of section 12022.53 affected application of section 654. Section 654 calls for an analysis of individual *acts*. (*Palacios, supra,* 41 Cal.4th at p. 732.) In contrast, section 12022.53, subdivision (f) limits the number of enhancements to one per *crime*. (§ 12022.53, subd. (f).) The Supreme Court interpreted section 12022.53, subdivision (f) in light of a maxim of statutory construction

---

[3] And rightly so, because each of those assaults was effected by a separate physical act and involved multiple victims.

[4] Efren was shot several times. Of course, the firing of each shot is a separate physical act. But the record does not indicate that each GBI enhancement was based on a different shot fired at Efren. In closing argument, the prosecutor did not distinguish between the four shots as a basis for the several GBI enhancements, saying: "[B]asically we have to prove that in addition to the 2 uses of the firearm did he cause GBI? Shot 4 times, in the hospital for 7 days." (Cf. *People v. Jones* (2012) 54 Cal.4th 350, 359 [142 Cal.Rptr.3d 561, 278 P.3d 821] [when determining whether verdicts are based on the same act, court looks to prosecutor's jury argument].) Moreover, the Attorney General's briefing does not defend the imposition of multiple punishment on that basis.

[5] Of course, sometimes the exact same act gives rise to both the substantive crime and its enhancement. Indeed, that is how enhancements usually work: they "do not define criminal acts; rather, they increase the punishment for those acts. They focus on *aspects* of the criminal act that are not always present and that warrant additional punishment." (*People v. Ahmed* (2011) 53 Cal.4th 156, 163 [133 Cal.Rptr.3d 856, 264 P.3d 822], original italics.) But that is not the case here, where the enhancement is punishing a criminal act (i.e., inflicting GBI on Efren) that is *not* the basis of the underlying crimes (i.e., the assaults on Nazario, Ignacio and Jose). In other words, the enhancement here is not merely punishing an "aspect" of the criminal act constituting the underlying offense, it is punishing a different act altogether.

providing that " ' "if exemptions are specified in a statute, we may not imply additional exemptions unless there is a clear legislative intent to the contrary. [Citation.]" ' " (*Palacios, supra,* 41 Cal.4th at p. 732.) Consequently, the Supreme Court concluded that through subdivision (f), "the Legislature has chosen to limit enhancements based on the *crimes* committed rather than an analysis of individual *acts* as called for in section 654." (*Palacios, supra,* at p. 732, original italics.)

*Palacios*'s analysis on that issue is relevant to the present case because section 12022.7 similarly provides that a court may not impose more than one enhancement "for the same offense." (§ 12022.7, subd. (h).) However, *Palacios*'s reasoning is distinguishable. *Palacios* observed that the difference between section 654's "act" analysis and section 12022.53's "crime" analysis supported the Supreme Court's conclusion regarding the legislative intent when "*read in conjunction with* the '[n]otwithstanding any other provision of law language' contained in section 12022.53, subdivisions (b), (c), and (d)." (*Palacios, supra,* 41 Cal.4th at p. 732, italics added.) Section 12022.7 has no analogous language indicating it must be applied "notwithstanding any other provision of law."

Since the section 12022.7 enhancement does not indicate it applies "notwithstanding any other provision of law," section 654 should be applied. The relevant maxim of statutory construction provides that " ' "if exemptions are specified in a statute, we may not imply additional exemptions *unless there is a clear legislative intent to the contrary.*" ' " (*Palacios, supra,* 41 Cal.4th at p. 732, italics added.) While section 12022.7 does identify an exemption limiting the number of enhancements to one per offense, there is "clear legislative intent" indicating this is not the only exemption. And that "clear legislative intent" is embodied in section 654 itself. Together, sections 654 and 12022.7 limit GBI enhancements to no more than one per crime *and* no more than one per act. (See §§ 12022.7, subd. (h) [permitting only one additional prison term for the same *offense*], 654 [permitting only one punishment per physical *act*].) The two limitations are not inherently inconsistent. And unlike section 12022.53, there is nothing in section 12022.7 suggesting that its one enhancement per crime limitation displaces, rather than complements, the one enhancement per act limitation of section 654. As a result, I would hold that section 12022.7 enhancements can be imposed no

---

That was not the case in *Oates.* In *Oates,* the act of shooting was the basis for both the enhancement (firearm-caused GBI) *and* the crime being enhanced (attempted murder). That is, the "discharge[ of] a firearm" (§ 12022.53, subd. (d)) that triggered the enhancement was also the act that constituted the attempted murders.

Consequently, it is possible that the *Oates* court simply was not considering the situation presented here when it employed the broad reasoning set out in the opinion.

more than once per *crime* (§ 12022.7, subd. (h)) *and* can be punished no more than once per *act* (§ 654).[6]

## D. *Application*

To determine whether the present enhancements improperly impose multiple punishment on a single act, courts must perform "an analysis of individual *acts* as called for in section 654." (*Palacios, supra,* 41 Cal.4th at p. 732, original italics.) Here, the relevant "act[s] or omission[s]" under section 654 was firing the shots that inflicted GBI on Efren; not the acts of pointing the gun at or near each of the three other assault victims. (See pt. B., *ante.*) Since the relevant acts had a single victim (i.e., Efren), the multiple victim exception would not apply. If the multiple victim exception does not apply, then section 654 would prohibit multiple punishment because the several enhancements were all based on the same injury.

## E. *Section 654's Purpose*

The framework described above also furthers section 654's purpose. " 'The purpose of the protection against multiple punishment is to insure that the defendant's punishment will be commensurate with his criminal liability. A defendant who commits an act of violence . . . by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person.' " (*Oates, supra,* 32 Cal.4th at p. 1063.) Broad application of *Oates* in all cases where multiple GBI enhancements are imposed with respect to one victim could frustrate, rather than promote, the purpose of the multiple victim exception. Imagine a defendant fires a gun once at a crowd of 10 people, causing great bodily injury to one person. Under *Oates*, the defendant could be punished for 10 GBI enhancements. But if the defendant had fired *10* shots into the same crowd, causing great bodily injury to *all 10* people, he would be punished for the same number of GBI enhancements as the defendant who only fired *once*. This result is contrary to the notion that " '[a] defendant who commits an act of violence . . . by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person.' "[7] (*Oates, supra,* 32 Cal.4th at p. 1063.)

---

[6] Except in cases where *People v. Correa* (2012) 54 Cal.4th 331 [142 Cal.Rptr.3d 546, 278 P.3d 809], applies.

[7] It seems clear that the enhancement statute itself permits such a result. (Cf. *Oates, supra,* 32 Cal.4th at pp. 1055–1062 [concluding § 12022.53, subd. (d) provides for multiple enhancements when one person is injured during the commission of multiple attempted murders]; see also *Oates, supra,* 32 Cal.4th at pp. 1069–1070 (conc. opn. of Werdegar, J.).) But I would submit that section 654—applied to section 12022.7 enhancements—does not.

I encourage the Supreme Court to consider whether *Oates* should apply when multiple section 12022.7 enhancements are applied to a single great bodily injury.[8]

Appellant's petition for review by the Supreme Court was denied February 1, 2017, S238652.

---

[8] While this would likely involve revisiting some of the reasoning employed in *Oates*, it would not require entirely overruling *Oates*. As noted above, the Supreme Court determined (after *Oates* was decided) that section 654 does not apply at all to section 12022.53 enhancements. (See generally *Palacios, supra,* 41 Cal.4th 720.) Therefore, the *result* in *Oates*—overturning a section 654 stay for multiple section 12022.53 enhancements—would remain viable under *Palacios*.