Filed 11/21/22  P. v. Carr CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D079869 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FVI18002544) |
| CHARLES BRUCE CARR, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, Debra Harris, Judge.  Vacated and remanded.

Mark D. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Kristen A. Ramirez and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

Charles Bruce Carr appeals the judgment sentencing him to prison for 43 years after a jury found him guilty of several felonies arising out of a

shooting incident. Carr contends: (1) the trial court erred by refusing to adequately inquire into his request for appointment of new counsel to prepare and file a motion for a new trial on the ground of ineffective assistance of trial counsel; (2) he is entitled to resentencing because the court imposed upper prison terms on one of the convictions and all of the firearm enhancements without jury findings or admissions of aggravating circumstances supporting imposition of upper terms, as are required by legislation that took effect after sentencing; (3) the court erred by imposing an unstayed prison term on a conviction that was based on the same criminal act or course of conduct as other convictions; and (4) the court erred by imposing certain fines and fees he cannot pay. We vacate the order denying the request for appointment of new counsel and the sentence and remand the matter for further proceedings.

## I.

## BACKGROUND

A. *Shooting Incident*

Carr and T. have two children, and T. has two other children, Ki. and Ka., from another relationship. Carr, T., and the four children lived with Carr's mother until July 2018, when T. and the children moved to live with Frank C. Carr began stalking T. and watching Frank's house.

On September 3, 2018, when Carr dropped off his children at Frank's house, he learned T., Ki., and Ka. were out to dinner with T.'s friend. Carr telephoned T. during the dinner; called her racist slurs and obscene names; and said, "I am ex-ing you off the f**king planet. You sorry, f**king c**t." Carr later sent T. a text message that threatened her with a gun.

When T.'s friend dropped her and the children off at Frank's house, Carr drove up, got out of his vehicle, and started yelling. He pulled out a

2

handgun and shot at T.'s friend's car. Carr then shot at T. and the children as she was ringing the doorbell to get into the house. After Frank let them in, he heard five more gunshots, three of which hit the house. Frank called 911 to report the shooting. Carr fled the scene and was later apprehended.

B. *Charges, Verdicts, and Findings*

The People charged Carr with attempted willful, deliberate, and premeditated murder of T. (count 1; Pen. Code, §§ 187, subd. (a), 664, subd. (a); undesignated section references are to this code); two counts of child endangerment (counts 2 & 3; § 273a, subd. (a)); shooting at an inhabited dwelling (count 4; § 246); possession of a firearm by a felon (count 5; § 29800, subd. (a)(1)); and assault with a firearm of T. (count 6; § 245, subd. (a)(2)). The People included firearm enhancement allegations with count 1 (§ 12022.53, subds. (b), (c)) and counts 2, 3, and 6 (§ 12022.5, subd. (a)). They also alleged Carr had a prior conviction that qualified as both a serious felony and a strike under the Three Strikes law (§§ 667, 1170.12).

The jury found Carr guilty of attempted voluntary manslaughter as a lesser included offense of count 1 (§§ 192, subd. (a), 664); guilty of grossly negligent discharge of a firearm as a lesser included offense of count 4 (§ 246.3, subd. (a)); and guilty of the offenses charged in counts 2, 3, 5, and 6. The jury found all firearm enhancement allegations true.

In a separate bench trial, the trial court found Carr had a prior conviction that qualified as a serious felony and a strike.

C. *Post-trial Motions*

After the jury returned its verdicts and the trial court made its findings, Carr asserted his right to represent himself (*Faretta v. California* (1975) 422 U.S. 806) and the trial court relieved appointed counsel.

3

While he was representing himself, Carr filed a motion for new trial in which he complained, among other things, that all six attorneys who had been appointed to represent him "ha[d] been ineffective and disconcerting at best," and not one of them "ha[d] shown or even implied one sign or attempt to be a loyal and zealous advocate[ ] for their client." In written opposition to the motion, the People argued, in part, that Carr had not shown in what manner trial counsel's performance was deficient.

Before his new trial motion was heard, Carr asked the trial court to appoint counsel. The court appointed the public defender's conflict panel to select an attorney to represent Carr, and set another hearing date for the motion and sentencing.

At the next hearing, Stuart O'Melveny, the attorney who had represented Carr during trial, appeared on his behalf. Carr requested new counsel because he did not "feel comfortable" with the reassignment of O'Melveny. The court then held a hearing pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) to inquire into the reasons for Carr's request.

During the *Marsden* hearing, Carr stated he had motions he wanted to file and wanted help from an attorney to make sure they were in proper order. When the trial court asked Carr to explain why O'Melveny could not represent him, he responded, "Well, your Honor, throughout the trial, he's provided ineffective assistance of counsel." The court told Carr that claim would be reviewed on appeal. The court then asked O'Melveny whether Carr wanted to file a motion for new trial based on ineffective assistance of counsel. O'Melveny said he did not know; and Carr said, "That's what I'm saying, your Honor." Carr added that he had "fired" O'Melveny because he (Carr) felt O'Melveny conspired with the district attorney "[b]y not calling any of [Carr's] witnesses." The trial court told Carr that "unless [he] c[a]me

4

up with something else," the court could not find ineffective assistance of counsel, and asked Carr to confer with O'Melveny about the motions Carr wanted to file.

After Carr and O'Melveny conferred, the trial court stated it was going to continue the matter so that O'Melveny could discuss the motions with Carr, and again told Carr the adequacy of O'Melveny's representation would be reviewed on appeal. The court then asked Carr whether he had any questions, and he responded, "I just don't feel comfortable. I don't feel like my best interest is on his mind." The court again offered Carr time to talk to O'Melveny about the motions Carr wanted to file, and again told Carr the adequacy of O'Melveny's representation would be reviewed on appeal. The court asked Carr what he wanted to do, and he answered, "I would think that I need help, your Honor." The court stated that O'Melveny was there to help Carr with the motions; that if he did not want O'Melveny's help he could again represent himself; and that no other attorney could effectively help with the motions because that attorney would not know what happened during trial and would have to read the entire trial transcript. After Carr conferred further with O'Melveny and offered no further grounds for substitution of counsel, the trial court denied the *Marsden* motion.

The trial court returned to open session and provided O'Melveny with copies of the new trial and other motions Carr had filed. The court advised Carr it would hear further motions about his relationship with O'Melveny if necessary. The court set a hearing for sentencing.

O'Melveny subsequently filed a motion for new trial on grounds of insufficiency of evidence and erroneous admission of evidence, but not ineffective assistance of counsel. At the hearing on the motion, O'Melveny informed the trial court that he had conferred with Carr about the motion

and Carr disagreed with the decision not to assert ineffective assistance of counsel as a ground for the motion. The court held a bench conference with O'Melveny and the prosecutor outside Carr's presence to discuss his disagreement with O'Melveny's strategy, and during the conference the court stated its willingness to hold another *Marsden* hearing if Carr felt O'Melveny was not adequately representing him on the new trial motion. After the conference, O'Melveny discussed it with Carr. Carr did not make another *Marsden* motion. O'Melveny and the prosecutor then argued the new trial motion, which the court denied.

D.    *Sentencing*

At the sentencing hearing, the trial court considered the probation officer's report, the parties' sentencing memoranda, the oral arguments of counsel, a letter from T., and Carr's statement. Based largely on the probation officer's report, the court identified several aggravating circumstances to support the imposition of upper prison terms, including: (1) the crimes involved great violence; (2) Carr dissuaded a witness; (3) he engaged in violent conduct indicating a serious danger to society; (4) he had numerous prior convictions; (5) he served numerous prior prison terms; (6) he was on probation when he committed the crimes; and (7) his prior performance on probation was unsatisfactory. (Cal. Rules of Court, rule 4.421.) The court found no mitigating circumstances. (*Id.*, rule 4.423.)

The trial court selected count 2 (child endangerment) as the principal count and sentenced Carr to the upper term of six years (§ 273a, subd. (a)), doubled to 12 years based on the prior strike conviction (§ 667, subd. (e)(1)), plus a consecutive upper term of 10 years for the attached firearm enhancement (§ 12022.5, subd. (a)). On count 1 (attempted voluntary manslaughter), the court imposed a consecutive term of one-third of one-half

6

the middle term of six years (§§ 192, subd. (a), 664, subd. (a), 1170.1, subd. (a)), i.e., one year, doubled to two years based on the prior strike conviction (§ 667, subd. (e)(1)), plus a consecutive term of one-third the upper term of 10 years, i.e., three years four months, for the attached firearm enhancement (§§ 12022.5, subd. (a), 1170.1, subd. (a)).[1] On count 3 (child endangerment), the court imposed a consecutive term of one-third the middle term of four years (§§ 273a, subd. (a), 1170.1, subd. (a)), i.e., one year four months, doubled to two years eight months based on the prior strike conviction (§ 667, subd. (e)(1)), plus a consecutive term of one-third the upper term of 10 years, i.e., three years four months, for the attached firearm enhancement (§§ 12022.5, subd. (a), 1170.1, subd. (a)). On count 4 (grossly negligent discharge of a firearm), the court erroneously imposed a consecutive term of one-third the middle term of five years for shooting at an inhabited dwelling (§§ 246, 1170.1, subd. (a)), i.e., one year eight months, doubled to three years four months based on the prior strike (§ 667, subd. (e)(1)).[2] On count 5 (possession of a firearm by a felon), the court imposed a consecutive term of one-third the middle term of two years (§§ 18, subd. (a), 29800, subd. (a)(1)),

---

[1] Because attempted voluntary manslaughter is not a felony to which a firearm enhancement under section 12022.53 applies (see § 12022.53, subd. (a) [listing felonies to which section applies]), the trial court substituted an enhancement under section 12022.5, subdivision (a). (See *People v. Tirado* (2022) 12 Cal.5th 688, 697 [court may impose lesser firearm enhancement necessarily included in one found true by jury]; *People v. Fialho* (2014) 229 Cal.App.4th 1389, 1398-1399 [court may impose § 12022.5 enhancement when § 12022.53 enhancement found true by jury does not apply to offense of which defendant was convicted].)

[2] The proper consecutive prison term is one year four months, which is one-third the middle term of two years for grossly negligent discharge of a firearm (§§ 246.3, subd. (a), 1170, subd. (h)(1), 1170.1, subd. (a)), i.e., eight months, doubled based on the prior strike conviction (§ 667, subd. (e)(1)).

i.e., eight months, doubled to one year four months based on the prior strike conviction (§ 667, subd. (e)(1)). On count 6 (assault with a firearm), the court imposed consecutive terms for the conviction and attached enhancement, but stayed their execution under section 654. The court added a consecutive term of five years for the prior serious felony conviction. (§ 667, subd. (a)(1).) Thus, the court sentenced Carr to an aggregate prison term of 43 years.

The trial court also ordered Carr to pay fines and assessments. The court found he had no ability to reimburse the fees of appointed counsel or the costs of preparing the probation officer's report. The court imposed on each conviction a court operations assessment of $40 (§ 1465.8, subd. (a)(1)) and a court facilities assessment of $30 (Gov. Code, § 70373, subd. (a)(1)). O'Melveny objected to imposition of the $10,000 restitution fine recommended by the probation officer, on the ground Carr had no ability to pay it. The court found $3,000 was an "appropriate" amount and imposed a restitution fine and a corresponding parole revocation restitution fine in that amount. (§§ 1202.4, subd. (b), 1202.45, subd. (a).)

## II.

## DISCUSSION

A. *Request for New Counsel to File Motion for New Trial*

Carr complains the trial court erred in its handling of his request for appointment of new counsel to file a motion for new trial, which was based in part on O'Melveny's ineffective assistance at trial. Citing statements by the trial court at the *Marsden* hearing that Carr could raise his ineffective assistance of counsel claim on appeal after he was sentenced, Carr contends the court did not conduct an inquiry adequate to determine whether he had a "colorable claim" of ineffective assistance that he could present by motion for new trial, and the matter should be remanded to allow the court to conduct

8

further inquiry and to make the determination. On the record presented, it does not appear the trial court had the information needed to exercise informed discretion on Carr's request, and a remand for further proceedings is therefore required.

We begin by setting out the governing law as established by our Supreme Court. "When, after trial, a defendant asks the trial court to appoint new counsel to prepare and present a motion for new trial on the ground of ineffective assistance of counsel, the court must conduct a hearing to explore the reasons underlying the request. [Citations.] If the claim of inadequacy relates to courtroom events that the trial court observed, the court will generally be able to resolve the new trial motion without appointing new counsel for the defendant. [Citation.] If, on the other hand, the defendant's claim of inadequacy relates to matters that occurred outside the courtroom, and the defendant makes a 'colorable claim' of inadequacy of counsel, then the trial court may, in its discretion, appoint new counsel to assist the defendant in moving for a new trial." (*People v. Diaz* (1992) 3 Cal.4th 495, 573-574 (*Diaz*).) After the required hearing is held, "substitute counsel should be appointed when, and only when, necessary under the *Marsden* standard, that is whenever, in the exercise of its discretion, the court finds that the defendant has shown that a failure to replace the appointed attorney would substantially impair the right to assistance of counsel [citation], or, stated slightly differently, if the record shows that the first appointed attorney is not providing adequate representation or that the defendant and the attorney have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citation]." (*People v. Smith* (1993) 6 Cal.4th 684, 696 (*Smith*).) We review a trial court's conduct of a hearing on a new counsel request and its decision on the request for abuse

9

of discretion. (*People v. Abilez* (2007) 41 Cal.4th 472, 488; *Marsden, supra,* 2 Cal.3d at pp. 123-124; *People v. Whitmore* (2022) 80 Cal.App.5th 116, 128.)[3]

We now turn to the record in this case. The court considered Carr's request at the *Marsden* hearing it held when Carr objected to reappointment of O'Melveny. When the court asked Carr to state the reasons he thought O'Melveny could not represent him (*Smith, supra,* 6 Cal.4th at p. 694 [court must allow defendant to state specific complaints about attorney]; *Marsden, supra,* 2 Cal.3d at p. 123 [same]), Carr asserted O'Melveny "provided ineffective assistance of counsel" because "he didn't properly go through the file . . . to find evidence in [Carr's] behalf." The court responded: "That would be reviewed on appeal  Your appellate attorney will look at all that Mr. O'Melveny did or did not do, and an [a]ppellate [c]ourt will decide whether or not there was ineffective assistance of counsel, because we're done with trial." When the court asked whether Carr wanted to file a motion for new trial based on ineffective assistance of counsel, he responded affirmatively, and added: "I feel that [O'Melveny was] in conspiracy with the DA's office . . . [b]y not calling any of my witnesses." The court responded: "That's over with. The trial is over with." The court told Carr he needed to "come up with something else" before it would find ineffective assistance, but all Carr added was that he did not "feel comfortable" or "feel like [his] best interest is on [O'Melveny's] mind." The trial court then told Carr that unless he filed a motion for new trial, he was going to be sentenced at the next hearing, and his "other concerns" could not be addressed until after sentencing. The court then allowed Carr to confer with O'Melveny. When neither added anything of substance on Carr's request for new counsel, the court denied the request.

---

[3]    We reject Carr's assertion that "[t]his is purely a question of law that should be reviewed de novo."

The record was not sufficiently developed for the trial court to exercise informed discretion. Carr's primary complaint was that O'Melveny provided ineffective assistance by failing to call witnesses at trial. To be entitled to substitute counsel to prepare a motion for new trial on that ground, Carr would have had to describe the nature and relevance of the testimony of the witnesses and explain how it would have exculpated him. (See *Diaz, supra,* 3 Cal.4th at pp. 574-575 [no abuse of discretion in denial of motion to appoint new counsel to move for new trial or in conduct of hearing on motion when defendant complained counsel failed to call witnesses at trial but defendant failed to explain how testimony would have exonerated him].) Although Carr should have been familiar with his burden based on his prior *Marsden* motions,[4] he neither identified the witnesses he believed O'Melveny should have summoned nor described their anticipated testimony. Carr might have thought it futile to do so, however, based on the trial court's repeated statements the trial was over and his claim of ineffective assistance of counsel for failure to call witnesses would be reviewed after sentencing by an appellate court. Once Carr complained O'Melveny had not called witnesses, the court should have asked who they were and "endeavor[ed] to learn whether the testimony might have been material or even crucial" by "question[ing] [Carr] as to their expected testimony." (*People v. Stewart* (1985) 171 Cal.App.3d 388, 398 (*Stewart*).) The court then should have allowed O'Melveny to respond by explaining why he did not call the

---

[4] By the time of the hearing on his request for new counsel to prepare the new trial motion, Carr had been through six attorneys, all of whom he complained had provided ineffective assistance. As the trial court later observed: "Even before the pandemic, Mr. Carr would file a *Marsden* motion, then move to represent himself, then file motions. We'd come back and he would say[,] [']I can't represent myself, and I want counsel back.['] "

11

witnesses. (*Smith*, *supra*, 6 Cal.4th at p. 694 [court must allow counsel to respond to defendant's complaints].) O'Melveny, though present at the hearing, was not questioned and made no response on his own. "A trial judge is unable to intelligently deal with a defendant's request for substitution of attorneys unless he is cognizant of the grounds which prompted the request." (*Marsden*, *supra*, 2 Cal.3d at p. 123; accord, *Stewart*, at p. 398.) The court's failure "to make a record that [Carr's] complaint had been adequately aired and considered" was error. (*People v. Eastman* (2007) 146 Cal.App.4th 688, 696 (*Eastman*).)

The appropriate remedy for this error is to vacate the order denying Carr's request for substitution of counsel and to remand the matter for further proceedings on the request. If, after further inquiry, the trial court appoints new counsel to make a motion for new trial based on ineffective assistance of trial counsel and new counsel makes such a motion, the court shall rule on the motion and, if it grants the motion, conduct a new trial. If, after further inquiry, the trial court again denies the request for new counsel, or grants the request and new counsel does not make a motion for new trial or the court denies any such motion, the court shall resentence Carr as discussed below. (*Eastman*, *supra*, 146 Cal.App.4th at p. 699; *Stewart*, *supra*, 171 Cal.App.3d at p. 398.) We express no opinion on how the trial court should rule on Carr's request after it conducts adequate further inquiry into the grounds for the request and allows O'Melveny to respond.

B.    *Imposition of Upper Prison Terms*

Carr next contends post-sentencing legislative changes restricting a court's discretion to impose upper prison terms to cases in which the trier of fact found or the defendant admitted aggravating circumstances require us to vacate the upper terms the trial court imposed on count 2 (child

12

endangerment) and on all the firearm enhancements and to remand the matter for resentencing. The People agree the legislative changes apply to Carr's prison sentence, but contend no resentencing is required, because the jury would have found the aggravating circumstances the trial court relied on to be true beyond a reasonable doubt had they been presented to the jury. Carr has the better argument.

While Carr's appeal was pending, statutory amendments took effect that restrict a trial court's discretion to impose an upper prison term based on aggravating factors identified by the court. As amended, section 1170, subdivision (b)(1) provides: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)." (Stats. 2021, ch. 731, § 1.3, eff. Jan. 1, 2022.) The amendments allow the court to impose an upper term "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).) Similar amendments restrict the court's discretion to impose the upper prison term on an enhancement. (§ 1170.1, subd. (d)(1), (2), as amended by Stats. 2021, ch. 731, § 2, eff. Jan. 1, 2022.) Thus, under the current versions of the determinate sentencing statutes, a court may impose an upper term prison sentence on a conviction or an enhancement only if aggravating circumstances have been found true beyond a reasonable doubt by the factfinder or admitted by the defendant.

We agree with the parties that these amendments reduce punishment and therefore apply to defendants, including Carr, whose cases were not final when the amendments took effect. (See *In re Estrada* (1965) 63 Cal.2d 740, 744-745; *People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1109 (*Zabelle*); *People v. Flores* (2022) 75 Cal.App.5th 495, 500 (*Flores*).) As noted, the parties disagree on whether the amendments require us to vacate the sentence and to remand the matter for further proceedings. For reasons discussed below, we conclude they do.

Several Courts of Appeal have addressed the effect of the statutory amendments and applied some form of harmless error analysis. (*Zabelle*, *supra*, 80 Cal.App.5th at p. 1110; *People v. Lopez* (2022) 78 Cal.App.5th 459, 465; *Flores*, *supra*, 75 Cal.App.5th at p. 500.) Under one form, " '[i]f a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true *at least a single aggravating circumstance* had it been submitted to the jury,' the error is harmless." (*Flores*, at p. 500, italics added, quoting *People v. Sandoval* (2007) 41 Cal.4th 825, 839 (*Sandoval*); accord, *People v. Salazar* (2022) 80 Cal.App.5th 453, 465, review granted Oct. 12, 2022, S275788.) Under another form, which this court adopted, the reviewing court "would have to conclude beyond a reasonable doubt that a jury would have found true beyond a reasonable doubt *every factor on which the court relied*, because the amended statute requires that every factor on which a court intends to rely in imposing an upper term, with the exception of factors related to a defendant's prior conviction(s), have been admitted by the defendant or proven to a jury (see § 1170, subd. (b))." (*Lopez*, at p. 466; accord, *People v. Wandrey* (2022) 80 Cal.App.5th 962, 982, review granted Sept. 28, 2022,

14

S275942.)[5]  Until our Supreme Court resolves the conflict in favor of a different approach, we shall use that taken in *Lopez*.

On the record presented, we cannot conclude beyond a reasonable doubt that a jury presented with evidence of the aggravating factors on which the trial court relied would have found *each one* true beyond a reasonable doubt.  Carr's prior convictions, prior prison terms, probation status, and poor performance on probation were documented in the probation officer's report and could easily be proven by certified records.  We are thus satisfied a jury presented with such records would have found those aggravating circumstances true beyond a reasonable doubt.  (See *Flores, supra*, 75 Cal.App.5th at p. 501 [concluding beyond reasonable doubt that jury would have found similar aggravating factors true].)

We do not reach the same conclusion about the other aggravating factors the trial court identified, namely, that the crimes "involved great violence," that Carr "engaged in violent conduct[ ] that indicate[d] a serious danger to society," and that he dissuaded T. from testifying.  (Cal. Rules of

---

[5]     Other Courts of Appeal have used a third form of analysis:  "The reviewing court determines (1)(a) beyond a reasonable doubt whether the jury would have found one aggravating circumstance true beyond a reasonable doubt and (1)(b) whether there is a reasonable probability that the jury would have found any remaining aggravating circumstance(s) true beyond a reasonable doubt.  If all aggravating circumstances relied upon by the trial court would have been proved to the respective standards, any error was harmless.  If not, the reviewing court moves to the second step of *Lopez*, (2) whether there is a reasonable probability that the trial court would have imposed a sentence other than the upper term in light of the aggravating circumstances provable from the record as determined in the prior steps.  If the answer is no, the error was harmless.  If the answer is yes, the reviewing court vacates the sentence and remands for resentencing consistent with section 1170, subdivision (b)."  (*People v. Dunn* (2022) 81 Cal.App.5th 394, 409-410, fn. omitted, review granted Oct. 12, 2022, S275655; accord, *Zabelle, supra*, 80 Cal.App.5th at p. 1112.)

15

Court, rule 4.421(a)(1), (a)(6), (b)(1).) "[T]o the extent a potential aggravating circumstance at issue in a particular case rests on a somewhat vague or subjective standard, it may be difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court." (*Sandoval, supra,* 41 Cal.4th at p. 840.) We cannot be confident the jury would have found, as the trial court did, that Carr's crimes involve *great* violence and a *serious* danger to society had the jury been asked to make such subjective and imprecise assessments. A reviewing court also may not "assume that the record reflects all of the evidence that would have been presented had aggravating circumstances been submitted to the jury." (*Id.* at p. 839.) Although the telephone call between Carr and T. was recorded and played for the jury, Carr was not charged with dissuading a witness. He "thus did not necessarily have reason—or the opportunity—during trial to challenge the evidence supporting [this] aggravating circumstance[ ] unless such a challenge also would have tended to undermine proof of an element of an alleged offense." (*Ibid.*)

In sum, "we cannot say that as to every [aggravating] factor 'the evidence supporting that factor is overwhelming and uncontested, and there is no "evidence that could rationally lead to a contrary finding." [Citation.]' [Citation.] It would be entirely speculative for us to presume, based on a record that does not directly address the aggravating factors, what a jury would have found true in connection with these factors. We therefore cannot affirm [Carr's] sentence on this basis." (*Lopez, supra,* 78 Cal.App.5th at p. 466.) Instead, we must vacate the sentence and remand the matter for further proceedings. If the trial court does not grant a new trial as discussed above (see p. 12, *ante*), on remand "the People may elect to proceed under the

16

requirements of the newly-amended version[s] of section[s] 1170, subdivision (b) [and 1170.1, subdivision (d)], which would permit the People to prove the existence of aggravating factors beyond a reasonable doubt to a jury, unless the defendant waives the right to a jury and agrees to have the factors decided by the court beyond a reasonable doubt; alternatively, the People may accept resentencing on the record as it stands." (*Lopez*, at p. 468.)

C.     *Imposition of Separate Punishment on Count 4*

As a third claim of error, Carr complains the trial court erred by imposing but not staying execution of a consecutive prison term on count 4 (grossly negligent discharge of a firearm). He argues a stay was required because the conviction was based on the same act or course of conduct (shooting at T. and the children) that underlay other convictions for which he had been sentenced to prison. We reject this complaint.

Generally a defendant may not be punished for more than one crime arising out of the same act, omission, or course of conduct even though it violates more than one criminal statute. (§ 654, subd. (a); *People v. Corpening* (2016) 2 Cal.5th 307, 311; *People v. Fuentes* (2022) 78 Cal.App.5th 670, 680.) Here, although the crimes of which the jury found Carr guilty occurred as part of one shooting incident, the evidence showed he fired multiple shots at multiple targets, including T.'s friend's car, T. and two of her children, and Frank's house. Each shot required a separate pull of the trigger, had a separate intent and objective, and posed a separate risk to the victims or their property. (*People v. Phung* (2018) 25 Cal.App.5th 741, 761; *People v. Trotter* (1992) 7 Cal.App.4th 363, 368.) Carr " 'should . . . not be rewarded where, instead of taking advantage of an opportunity to walk away from the victim[s], he voluntarily resumed his . . . assaultive behavior.' " (*Trotter*, at p. 368.) Moreover, separate punishment is permitted when the

17

same violent act or course of conduct affects more than one victim. (*People v. Oates* (2004) 32 Cal.4th 1048, 1063; *In re Ford* (1967) 66 Cal.2d 183, 184; *People v. Reyes-Tornero* (2016) 4 Cal.App.5th 368, 377.) "The multiple victim exception, simply stated, permits one unstayed sentence per victim of all the violent crimes the defendant commits incidental to a single criminal intent." (*People v. Garcia* (1995) 32 Cal.App.4th 1756, 1784.) T.'s friend, at whose vehicle Carr shot, and Frank, at whose house Carr shot, were not victims of any of the other crimes for which the court sentenced him to prison. Hence, for firing multiple gunshots at multiple victims, Carr was subject to separate punishment on count 4 for discharging a firearm in a grossly negligent manner. (*Phung*, at p. 761; *Garcia*, at p. 1785.)

The trial court, however, imposed punishment for the wrong crime on count 4. The court sentenced Carr for shooting at an inhabited dwelling, even though the jury found him guilty of the lesser included offense of negligently discharging a firearm. (See pp. 3, 7, *ante*.) We have already found it necessary to vacate the entire prison sentence. On remand, if the trial court does not grant a new trial as discussed above (see p. 12, *ante*), it must sentence Carr for the lesser included offense of which he was found guilty on count 4.

D.      *Inability to Pay Fines and Assessments*

Carr's final challenge is to the trial court's imposition of a $3,000 restitution fine, a corresponding parole revocation restitution fine, and court operations and court facilities assessments totaling $70 per conviction. Relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157, Carr contends imposition of the fines and assessments deprived him of property without due process of law because the People did not prove he had the ability to pay them. He asks this court to vacate the fines and fees. The People argue Carr

18

forfeited his due process challenge to the fines and his inability-to-pay challenge to the assessments by failing to assert them in the trial court. They also argue imposition of the fines and assessments did not violate Carr's constitutional rights, and any error in the trial court's failure to consider his inability to pay was harmless because Carr can pay the fines and assessments from the wages he will earn during service of his lengthy prison term. As we shall explain, we find it appropriate to vacate the challenged fines and fees and to remand for reconsideration by the trial court.

As a threshold matter, we conclude Carr did not forfeit his challenges. At the sentencing hearing, counsel objected Carr could not pay the $10,000 restitution fine recommended by the probation officer. In response, the court set the fine at $3,000. The court also found Carr had no ability to pay the fees of appointed counsel or the costs of preparation of the probation officer's report. The court was thus well aware of Carr's inability to pay, even though he did not specifically assert that inability with respect to the court operations and court facilities assessments. The issue was adequately preserved for appeal. (Cf. *People v. Kopp* (2019) 38 Cal.App.5th 47, 94, fn. 23 [issue of inability to pay fines and assessments was preserved when raised by codefendant and addressed by trial court], review granted Nov. 13, 2019, S257844 (*Kopp*).)

The record, however, is not well developed on the issue. In such situations, appellate courts have remanded for the trial court to reconsider the amounts of fines and fees in light of the defendant's ability to pay them. (See, e.g., *People v. Montes* (2021) 59 Cal.App.5th 1107, 1121-1122; *People v. Son* (2020) 49 Cal.App.5th 565, 591-592; *Kopp, supra,* 38 Cal.App.5th at p. 96, review granted.) Reconsideration of the fines and assessments imposed on Carr is appropriate as part of the remand we have already found

19

necessary for the trial court to reconsider his prison sentence. In setting the amount of the restitution fine and the parole revocation restitution fine, one factor the court may consider is "the number of years of imprisonment the defendant is ordered to serve." (§ 1202.4, subd. (b)(2); see § 1202.45, subd. (a) [court must set parole revocation restitution fine in same amount as restitution fine].) That number may change when the trial court reconsiders Carr's prison term on remand. And if the court adjusts the amount of the restitution fine based on any change in Carr's prison term, that adjustment may in turn affect Carr's ability to pay the court operations and court facilities assessments. We therefore vacate the fines and assessments and remand for the trial court to reconsider them in the event it does not grant a new trial as discussed above (see p. 12, *ante*). In doing so, the court shall consider whatever additional evidence and argument on Carr's ability to pay the parties may present.

20

## III.

## DISPOSITION

The order denying the request for appointment of new counsel to make a motion for new trial based on ineffective assistance of trial counsel and the sentence are vacated. The matter is remanded to the trial court for further proceedings consistent with this opinion.

IRION, J.

WE CONCUR:


HUFFMAN, Acting P. J.


AARON, J.

21